The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RENALDO WHITE and RANDOLPH NADEAU, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>SYMETRA ASSIGNED BENEFITS SERVICE COMPANY and SYMETRA LIFE INSURANCE COMPANY,<br><br>       Defendants. | No. 2:20-cv-01866-MJP<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**NOTE ON MOTION CALENDAR: April 15, 2022**<br><br>**ORAL ARGUMENT REQUESTED** |

PLS.' MOT. FOR CLASS CERTIFICATION
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  RELIEF REQUESTED ....................................................................................... 2

III.  STATEMENT OF FACTS ................................................................................... 2

    A.  Structured Settlement Annuities and the Rise of the Factoring
        Industry ...................................................................................................... 2

    B.  Symetra Enters the Factoring Business. ................................................... 3

    C.  Symetra and SABSCO's Unique Position in the Factoring
        Industry ...................................................................................................... 5

    D.  Defendants Solicit the Injury Victims They Had Committed to
        Protect ........................................................................................................ 6

    E.  Defendants' Conduct is Condemned in the SSA Industry. ..................... 10

IV.  LEGAL STANDARD ....................................................................................... 12

V.  ARGUMENT .................................................................................................... 13

    A.  Rule 23(a) Is Satisfied. .......................................................................... 13

        1.  Numerosity ................................................................................... 13

        2.  Commonality ................................................................................ 13

        3.  Typicality ..................................................................................... 16

        4.  Adequacy ..................................................................................... 17

    B.  Rule 23(b)(3)'s Predominance Requirement Is Satisfied. ..................... 18

        1.  Common Issues Predominate with respect to Plaintiffs'
            Conspiracy Claims ...................................................................... 20

            a.  RICO Claims ................................................................... 20

                (i)  Whether Defendants Conducted a RICO
                      Enterprise Will be Subject to Class-wide
                      Proof. ................................................................. 20

                (ii)  Injury to Plaintiffs and Causation of Those
                      Injuries Will Likewise be Established
                      Classwide. ......................................................... 21

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b.     Common Issues Predominate with Respect to Plaintiffs' Civil Conspiracy Claim ............................................ 24

2.     Common Issues Predominate with Respect to Plaintiffs' Consumer Protection Act ("CPA") Claim ............................................ 25

3.     Common Issues Predominate with Respect to Plaintiffs' Breach of Fiduciary Duty Claim ............................................ 28

4.     Common Issues Predominate with Respect to Plaintiffs' Unjust Enrichment Claim Against Symetra as Annuity Issuer ............................................ 31

5.     Common Issues Predominate with Respect to the Contract-Based Claims ............................................ 32

a.     The Power Subclass's Breach of Contract Claim ............................................ 32

b.     Good Faith and Fair Dealing Against SABSCO and Tortious Interference with Contract Against Symetra ............................................ 33

C.     A Class Action is the Superior Method for Managing This Action. ................. 34

VI.     CONCLUSION ............................................ 34

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aecon Bldgs., Inc. v. Zurich N. Am.*,
　572 F. Supp. 2d 1227 (W.D. Wash. 2008) ................................................................ 25, 26

*Affiliated Ute Citizens of Utah v. United States*,
　406 U.S. 128 (1972) .......................................................................................................... 23

*Agne v. Papa John's Int'l, Inc.*,
　286 F.R.D. 559 (W.D. Wash. 2012) .............................................................................. 13

*Air Serv Corp. v. Flight Servs. & Sys., Inc.*,
　199 Wn. App. 1011, 2017 WL 2345701 (2017) ........................................................ 32

*All Star Gas, Inc. v. Bechard*,
　100 Wn. App. 732, 998 P.2d 367 (2000) .................................................................... 24

*Allapattah Servs., Inc. v. Exxon Corp.*,
　333 F.3d 1248 (11th Cir. 2003) ..................................................................................... 32

*Ambach v. French*,
　167 Wn.2d 167, 216 P.3d 405 (2009) .......................................................................... 26

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
　568 U.S. 455 (2013) .......................................................................................................... 18

*In re Anthem, Inc. Data Breach Litig.*,
　327 F.R.D. 299 (N.D. Cal. 2018) .................................................................................. 32

*In re Ariz. Theranos, Inc., Litig.*,
　No. 2:16-cv-2138-HRH, 2020 WL 5435299 (D. Ariz. Mar. 6, 2020), *aff'd in
　part, rev'd in part and remanded sub nom.*, *B.P. v. Balwani*, Nos. 20-15974,
　20-15976, 2021 WL 4077008 (9th Cir. Sept. 8, 2021) .......................................... 21

*In re Badger Mountain Irrigation Dist. Sec. Litig.*,
　143 F.R.D. 693 (W.D. Wash. 1992) .............................................................................. 24

*Badgett v. Sec. State Bank*,
　116 Wn.2d 563, 807 P.2d 356 (1991) .......................................................................... 33

*Bailey v. Rite Aid Corp.*,
　338 F.R.D. 390 (N.D. Cal. 2021) .................................................................................. 28

*Barnes v. Andrews*,
　298 F. 614 (S.[D.]N.Y. 1924) ......................................................................................... 29

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Beebe v. Pac. Realty Tr.*,
  99 F.R.D. 60 (D. Or. 1983) ............................................................................... 14

*In re Beer Distrib. Antitrust Litig.*,
  188 F.R.D. 549 (N.D. Cal. 1998) ..................................................................... 17

*Bias v. Wells Fargo & Co.*,
  312 F.R.D. 528 (N.D. Cal. 2015) ..................................................................... 23

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ............................................................................ 23

*Blough v. Shea Homes, Inc.*,
  No. 2:12-cv-01493 RSM, 2014 WL 3694231 (W.D. Wash. July 23, 2014) ................... 27, 28

*Boyle v. United States*,
  556 U.S. 938 (2009) ........................................................................................... 20

*Bridge v. Phx. Bond & Indem. Co.*,
  553 U.S. 639 (2008) ........................................................................................... 22

*Bryant v. Country Life Insurance Co.*,
  414 F. Supp. 2d 981 (W.D. Wash. 2006) ......................................................... 25

*City of Seattle v. Monsanto Co.*,
  387 F. Supp. 3d 1141 (W.D. Wash. 2019) ....................................................... 31

*Cohen v. Trump*,
  303 F.R.D. 376 (S.D. Cal. 2014) ...................................................................... 23

*Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*,
  168 Wn.2d 421, 228 P.3d 1260 (2010) ....................................................... 15, 27

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................................. 19

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ........................................................... 14, 28

*Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*,
  197 Wn. App. 875, 391 P.3d 582 (2017) ...................................................... 27, 28

*Edwards v. First Am. Corp.*,
  798 F.3d 1172 (9th Cir. 2015) ................................................................... *passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ........................................................................................... 18

PLS.' MOT. FOR CLASS CERTIFICATION - iv
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Estakhrian v. Obenstine*,
   320 F.R.D. 63 (C.D. Cal. 2017) ..................................................................................29

*Eugster v. City of Spokane*,
   121 Wn. App. 799, 91 P.3d 117 (2004)......................................................................33

*Falco v. Nissan N. Am. Inc.*,
   No. CV 13-00686 DDP, 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016).........................28

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ......................................................................................20

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018) .......................................................................... 14, 28

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D. 472 (W.D. Pa. 1999)................................................................................21

*Ford v. Trendwest Resorts, Inc.*,
   146 Wn.2d 146, 43 P.3d 1223 (2002) ........................................................................33

*In re Foreman*,
   365 Ill. App. 3d 608, 850 N.E.2d 387 ........................................................................12

*Frank Coluccio Constr. Co. v. King County*,
   136 Wn. App. 751, 150 P.3d 1147 (2007)...................................................................33

*Friedman v. 24 Hour Fitness USA, Inc.*,
   No. CV 06-6282 AHM, 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009)........................22

*In re Gaming Lottery Sec. Litig.*,
   58 F. Supp. 2d 62 (S.D.N.Y. 1999).............................................................................17

*Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*,
   446 U.S. 318 (1980) ...................................................................................................13

*In re Guardianship of Eisenberg*,
   43 Wn. App. 761, 719 P.2d 187 (1986)......................................................................30

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778, 719 P.2d 531 (1986) ................................................................... 25, 26

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................................. 17, 18

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................................16

*Hoffman Elec., Inc. v. Emerson Elec. Co.*,
   754 F. Supp. 1070 (W.D. Pa.1991) ...................................................................... 14, 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .........................................................................15

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012)...........................................................................21

*Jackson v. Smith*,
   254 U.S. 586 (1921) ........................................................................................30

*Jama v. State Farm Fire & Cas. Co.*,
   No. C20-652 MJP, 2021 WL 2711464 (W.D. Wash. July 1, 2021) .............. 33, 34

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ................................................................... 13, 19

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ..................................................................*passim*

*Kane v. Klos*,
   50 Wn.2d 778, 314 P.2d 672 (1957) ...............................................................30

*Kelley v. Microsoft Corp.*,
   251 F.R.D. 544 (W.D. Wash. 2008).................................................................32

*Kennedy v. Jackson National Life Ins. Co.*,
   No. C 07-0371 CW, 2010 WL 2524360 (N.D. Cal. June 23, 2010)....................23

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ....................................................................28

*Leingang v. Pierce Cnty. Med. Bureau*,
   131 Wn.2d 133, 930 P.2d 288 (1997) ..............................................................25

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ..........................................................................19

*Liebergesell v. Evans*,
   93 Wn.2d 881, 613 P.2d 1170 (1980) ..............................................................29

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) .........................................................................34

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ..........................................................................16

*Lubin v. Sybedon Corp.*,
   688 F. Supp. 1425 (S.D. Cal. 1988) ................................................................24

*Lymburner v. U.S. Fin. Funds, Inc.*,
   263 F.R.D. 534 (N.D. Cal. 2010) ....................................................................21

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Mason v. Mortg. Am., Inc.*,
  114 Wn.2d 842, 792 P.2d 142 (1990) ................................................................26

*In re MDC Holdings Sec. Litig.*,
  754 F. Supp. 785 (S.D. Cal. 1990) ....................................................................24

*In re Med. Cap. Sec. Litig.*,
  No. SAML 10-2145 DOC (RNBx), 2011 WL 5067208 (C.D. Cal. July 26,
  2011) ...................................................................................................................32

*Microsoft Corp. v. Motorola, Inc.*,
  963 F. Supp. 2d 1176 (W.D. Wash. 2013) .........................................................33

*Miller v. U.S. Bank of Wash., N.A.*,
  72 Wn. App. 416, 865 P.2d 536 (1994)..............................................................28

*Montclair United Soccer Club v. Count Me In Corp.*,
  No. C08-1642-JCC, 2009 WL 2985475 (W.D. Wash. Sept. 14, 2009) ...............34

*In re Morning Song Bird Food Litig.*,
  320 F.R.D. 540 (S.D. Cal. 2017)........................................................................23

*Mortimore v. Fed. Deposit Ins. Corp.*,
  197 F.R.D. 432 (W.D. Wash. 2000)....................................................................32

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
  268 F.R.D. 652 (S.D. Cal. 2010)........................................................................16

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006), *motion to decertify denied*, 287 F.R.D. 590
  (C.D. Cal. 2012) ...................................................................................... 20, 21, 23

*Ngethpharat v. State Farm Mut. Ins. Co.*,
  339 F.R.D. 154 (W.D. Wash. 2021) (Pechman, J.)........................................ 12, 17

*Nordstrom, Inc. v. Tampourlos*,
  107 Wn.2d 735, 733 P.2d 208 (1987) ................................................................26

*In re Northrop Grumman Corp. ERISA Litig.*,
  No. CV 06-06213 MMM, 2011 WL 3503264 (C.D. Cal. Mar. 29, 2011) ............17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .............................................................................18

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms.
Co.*,
  943 F.3d 1243 (9th Cir. 2019) ...........................................................................22

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wn.2d 27, 204 P.3d 885 (2009) ...........................................................25, 26

PLS.' MOT. FOR CLASS CERTIFICATION - vii
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Pierce v. NovaStar Mortg., Inc.*,
238 F.R.D. 624 (W.D. Wash. 2006)............................................................28

*Pistoll v. Lynch*,
96 F.R.D. 22 (D. Haw. 1982).....................................................................14

*Plascencia v. Lending 1st Mortg.*,
259 F.R.D. 437 (N.D. Cal. 2009)..............................................................20

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
No. 3:15-md-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) ................29, 32

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ..........................................................19, 22, 27

*In re Rapid Settlements Ltd's Application for Approval of Structured Settlement
Payment Rights*,
133 Wn. App. 350, 136 P.3d 765 (2006)....................................................12

*Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*,
No. E040289, 2007 WL 1576437 (Cal. Ct. App. June 1, 2007).......................12

*Reichert v. Keefe Commissary Network, L.L.C.*,
331 F.R.D. 541 (W.D. Wash. 2019)...........................................................28

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) .....................................................................19

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ..................................................................16

*Roil Energy, LLC. v. Edington*,
195 Wn. App. 1030, 2016 WL 4132471 (2016).............................................29

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010)..................................................................32

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ................................................................................20

*Senn v. Nw. Underwriters, Inc.*,
74 Wn. App. 408, 875 P.2d 637 (1994).......................................................29

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003).......................................................................32

*Sorrel v. Eagle Healthcare, Inc.*,
110 Wn. App. 290, 38 P.3d 1024 (2002)......................................................26

PLS.' MOT. FOR CLASS CERTIFICATION - viii
(2:20-cv-01866-MJP)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...........................................................................17

*Stephens v. Omni Ins. Co.*,
  138 Wn. App. 151, 159 P.3d 10 (2007).............................................................25

*Tavenner v. Talon Grp.*,
  No. C09-1370RSL, 2012 WL 1022814 (W.D. Wash. Mar. 26, 2012) .................30

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ...........................................................18, 27, 28

*Tyson Foods Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .......................................................................................18

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
  122 F.R.D. 251 (C.D. Cal. 1988) .................................................11, 14, 15, 21

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005).....................................................................14, 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................13

*Waldrup v. Countrywide Fin. Corp.*,
  No. 2:13-cv-08833-CAS, 2018 WL 799156 (C.D. Cal. Feb. 6, 2018) ...........22, 23

*White v. Symetra Assigned Benefits Serv. Co.*,
  No. C20-1866 MJP, 2021 WL 3472408 (W.D. Wash. Aug. 5, 2021)
  (Pechman, J.)............................................................................21, 25, 26

*Williams v. Queen Fisheries, Inc.*,
  2 Wn. App. 691, 469 P.2d 583 (1970) ...............................................................30

*Winkler v. DTE, Inc.*,
  205 F.R.D. 235 (D. Ariz. 2001) ........................................................................32

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) .....................................................................13, 27

*Young v. Young*,
  164 Wn.2d 477, 191 P.3d 1258 (2008) ........................................................30, 32

*Zepeda v. PayPal, Inc.*,
  No. C 10-2500 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015).....................32

**Statutes**

18 U.S.C. § 1961(4) ...........................................................................................20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

18 U.S.C. § 1962(c) ..................................................................................................20

18 U.S.C. § 1964(c) ..................................................................................................20

26 U.S.C. § 7520 ......................................................................................................19

Internal Revenue Code § 130 ...................................................................................11

Periodic Payment Settlement Act ..............................................................................2

Pub. L. No. 97-473, 96 Stat. 2605 (1983) .................................................................3

RCW 19.86.010(2) ...................................................................................................25

RCW 19.86.020 ..................................................................................................15, 25

RCW 19.86.090 ........................................................................................................26

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................ 12, 13, 16, 17

Fed. R. Civ. P. 23(b) ........................................................................................*passim*

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................................17

**Other Authorities**

7A Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1766 (4th ed. 2021) ...........................................................................................17

Deborah A. DeMott, *Causation in the Fiduciary Realm*, 91 Boston U. L. Rev. 851
(2011) .................................................................................................................30

*NSSTA Position Paper* at p. 1, Nat'l Structured Settlements Trade Ass'n (Sept.
2019)....................................................................................................................2

*Restatement (First) of Agency* § 469 (1933)............................................................30

*Restatement (Third) Restitution and Unjust Enrichment* § 43 (2011) ........................30

PLS.' MOT. FOR CLASS CERTIFICATION - x
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.      INTRODUCTION

This action arises from the fraudulent and deceptive business practices of Defendants Symetra Life Insurance Company ("Symetra") and its affiliate, Symetra Assigned Benefits Service Company ("SABSCO") (collectively, "Defendants"). By taking on the roles of issuer and owner of structured settlement annuities ("SSAs"), Defendants committed to safeguard the future financial well-being of personal injury victims through the provision of long-term, tax-free payment streams for needed medical care and living expenses. In addition to premium payments from the settling defendant or its liability insurer in the underlying personal injury case, Defendants garnered substantial and meaningful tax benefits for taking on these duties to their payees.

After taking in billions in SSA premiums, Defendants then used their superior knowledge and unequal bargaining power to prey upon those very same injury victims they promised to protect, purchasing their future payments at a steep discount in factoring transactions (*i.e.*, purchasing periodic payment streams arising under SSAs for lump sums). In public, Defendants sought to portray this disloyal and predatory conduct as merely offering a "service"—indeed, Defendants used their databases containing payees' names and other sensitive and protected private information to aggressively market this service directly to them. Internally, Defendants' documents revealed their true motivation: profit. From their factoring scheme, Defendants earned substantial revenue and got "off-risk" in a challenging interest rate environment, all while keeping their tax benefits. But the cost to annuitants was steep: they lost their lost long-term security and the tax-free status of their annuity payments.

Plaintiffs Renaldo White and Randolph Nadeau ("Plaintiffs") now seek certification of a class of victims who, like themselves, were the beneficiaries of annuities purchased by SABSCO and issued by Symetra and who later sold some or all of their payments back to those very same entities. This case is appropriate for class treatment. Defendants had the same relationship with each member of the class. Defendants' liability will be driven by common questions and determined by common proof, as this action arises from a common scheme by Defendants and a course of conduct common to all class members. And, as demonstrated in the accompanying expert

report of veteran actuary Corwin Zass ("Zass Report"),[1] injury and damages will be proven by methodologies common to the class. A class action is clearly the superior method of resolving this controversy, given the predominance of common issues and efficiencies to be gained.

## II.      RELIEF REQUESTED

Plaintiffs move for an order certifying the following classes and appointing Keller Rohrback L.L.P., Edward Stone Law P.C., and Marcus & Auerbach LLC as Class Counsel:

**Nationwide Class**: All persons who are or were, at any time, annuitants of an SSA that contemplated life contingent payments issued by Symetra and who subsequently sold to a Symetra affiliate the right to receive payments from that SSA in a factoring transaction.

**Nationwide *Void Ab Initio* Subclass**: All members of the Class whose contract defining the annuity at issue included language explicitly stating that the annuitants lack the power to transfer their future SSA payments.

## III.      STATEMENT OF FACTS

### A.      Structured Settlement Annuities and the Rise of the Factoring Industry.

SSAs were developed in the 1970s to ensure tort victims' long-term well-being and to reduce the risk that they would become wards of the state.[2] When a tort case resolved, SSAs allowed the plaintiffs to receive their settlement funds over time, instead of as one lump sum. Rather than take on the ongoing payment obligation, the defendants in those cases would assign their payment obligations to entities designed for that purpose, called assignment companies. In turn, the assignment company would purchase an annuity from a highly-rated life insurance company to fulfill the ongoing payment obligations. Where payment obligations depended upon how long the tort victim would live (as in a "life contingent" SSA), the companies collected personal and protected medical information. As owner of the SSA, the assignment company remains liable for making the periodic payments to the payees even after the purchase of the SSA.

Life insurance companies, including Symetra (then known as Safeco), lobbied Congress extensively to provide for tax-free treatment of SSAs. In 1983, Congress passed the Periodic

---

[1] Ex. 1. All references to "Ex." are to the exhibits attached to the Declaration of Alison E. Chase in Support of Plaintiffs' Motion for Class Certification ("Chase Decl."), filed with this motion.

[2] *See NSSTA Position Paper* at p. 1, Nat'l Structured Settlements Trade Ass'n (Sept. 2019), https://www.nssta.com/sites/default/files/library/2019/2019-09/2019_CAUCUS%233_NSSTA_Position_Paper0919.pdf; 127 Cong. Rec. S15005 (daily ed. Dec. 10, 1981) (statement of Sen. Baucus); Am. Compl.—Class Action ("Compl.") ¶¶ 3 & n.1, 30, 32 & n.6, Dkt. #28.

PLS.' MOT. FOR CLASS CERTIFICATION - 2
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3052
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Payment Settlement Act ("Periodic Payment Act"), providing that the creation and sale of SSAs would be tax-free to the injured party and that assignment companies, like SABSCO, could exclude the payment they received from the responsible party from income, so long as the funds were used to purchase an annuity contract for the sole and exclusive benefit of the tort victim.[3] These measures, insurance companies like Symetra promised, would ensure that settlement payments would meet victims' needs over time and prevent them from becoming public charges.[4]

As the primary markets for SSAs expanded, the factoring industry developed. Factoring companies offered SSA payees (the tort victims) immediate lump sums in exchange for the payees future SSA payments.[5] Factoring companies offer the lump sums at highly discounted rates, giving annuitants pennies on the dollar for their future payments.

**B.    Symetra Enters the Factoring Business.**

For roughly three decades, Symetra was in the business of issuing SSAs.[6] From its inception in 1984 until 2005, SABSCO's "sole operation" had been to act as an assignment company, "accept[ing] structured settlement payment obligations under 'Qualified Assignments' as defined in Internal Revenue Code [("IRC")] section 130."[7]

Shifts in the industry, falling interest rates, and emerging underwriting experience meant that the SSA business was becoming less profitable for Symetra: SSAs require high reserves, which, when coupled with statutory restrictions on investment, made SSAs less profitable than originally projected by Symetra. Symetra assessed the future profitability of their existing block of SSAs in the early 2000s; Symetra (then part of Safeco) funded a two-part study (the "Safeco Study") analyzing SSAs and their potential for future profit or loss.[8] The Safeco Study concluded that SSAs could become unprofitable for insurance companies, but it would "take many years to

---

[3] Pub. L. No. 97-473, 96 Stat. 2605 (1983); Compl. ¶ 33; Ex. 2.
[4] Compl. ¶ 47.
[5] *Id.* ¶ 51.
[6] Because of market shifts, Symetra stopped issuing new SSAs in 2012. Symetra could not fully remove itself from the business, however, as it maintained those SSAs it had already issued.
[7] Ex. 3, at DEF_001601.
[8] *See* Ex. 4 (Craig J. Schmidt & Richard B. Singer, *Structured Settlement Annuities, Part 1: Overview and the Underwriting Process*, 32 J. Ins. Med. 131-36 (2000)); Ex. 5 (Craig J. Schmidt & Richard B. Singer, *Structured Settlement Annuities, Part 2: Mortality Experience 1967-95 and the Estimation of Life Expectancy in the Presence of Excess Mortality*, 32 J. Ins. Med. 137-54 (2000)).

PLS.' MOT. FOR CLASS CERTIFICATION - 3
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

determine whether underwriting decisions and actuarial planning" would translate to profit or loss to an insurance company.[9]

In 2005, Defendants saw an opportunity: factoring. Factoring would not only eliminate risk, but also make a profit for Symetra and its affiliates. Factoring would ensure the best of all worlds. Defendants reaped all the benefits of the tax-free SSAs, kept the returns earned on the SSA premiums, and shed their future contractual and fiduciary obligations to annuitants. Defendants set forth their new factoring strategy in their 2005 business plan to provide "funding services" through SABSCO. They did so even though their own study had demonstrated that the factoring of annuitant's future SSA payments put annuitants, who they were supposed to protect, at heightened risk of serious medical complications and premature death.[10]

In that business plan, Defendants described how factoring would generate "improved financial returns" for Symetra.[11] Defendants sought to achieve a 13% return on investment over the first three years of its factoring operations.[12] The business plan stated:

> Symetra Life will benefit from the discount rate used in its commutation agreement with SABSCO as well as the discount rate already embedded in its annuity reserves. Symetra Life may also receive fee income by billing [] SABSCO for services it provides to complete the factoring transaction. SABSCO's tax status under IRC § 130 will be protected[.][13]

And profit remained Defendants' aim throughout the class period. An April 2009 presentation confirmed that factoring was a profit opportunity for Symetra—and was not motivated by client service.[14] Symetra created Funding Services within SABSCO, "to diversify Symetra's income stream and to reduce exposure to traditional interest rate environment."[15]

As revenues declined from their 2010-2011 peak, Defendants set out aggressive plans to "[i]ncrease [r]evenue."[16] Confirming their profit motive, Defendants placed a "floor" on transactions.[17] In 2009, Defendants internal goal was a minimum of $2,500 of GAAP revenue per

---

[9] Ex. 4, at p. 136.
[10] *Id.* at p. 135.
[11] Ex. 3, at DEF_001600.
[12] *Id.* at DEF_001601.
[13] *Id.* at DEF_001600; *see also* Ex. 11, at pp. 52–54.
[14] Ex. 6, at DEFESI_007482.
[15] Ex. 7, at DEFESI_119030.
[16] *See, e.g.*, Ex. 8, at DEFESI_142118.
[17] *See, e.g.*, Ex. 11, at pp. 107–08.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

transaction.[18] As the number of qualifying benefit streams dwindled, Defendants' factoring became more aggressive and their revenue goal became $7,500 in GAAP revenue per transaction.[19]

## C.   Symetra and SABSCO's Unique Position in the Factoring Industry.

Defendants were not an ordinary factoring company. Initially, Defendants occupied a unique position and their plan to create an in-house factoring company "represent[ed] a new approach in the structured settlement factoring industry."[20] Defendants quickly determined that they did not have to borrow to fund their operations;[21] rather, the use of a "commutation model" would allow them to leverage their reserves while retaining their tax benefits.[22] The commutation model provided GAAP, statutory accounting, and tax benefits to Symetra and SABSCO,[23] but not to their annuitants who would lose the tax-free status of their SSA payments through a factoring transaction, not to mention the security of a steady income stream.[24] And by limiting its purchases to Symetra-issued and SABSCO-owned annuities, Defendants faced a "low risk of default."[25]

Further, as Defendants remained an assignment and insurance company, they could leverage the information and access they had by virtue of their relationship with their own client-annuitants. While traditional factoring companies had substantial costs in advertising and identifying potential clients, Defendants were able to skip straight to the annuitants. Unlike third-party factoring companies that had to outlay substantial sums "to acquire potential leads, including [through] television advertising, [i]nternet sites, and some brokers,"[26] Defendants had a ready-made client base. Defendants thus had an intrinsic advantage in entering the factoring market—they did not have to expend substantial resources "prospect[ing]" for clients.[27] Defendants had a list of known annuitants and their contact information, and Defendants were already engaged in

---

[18] Ex. 9, at DEF_001711.
[19] *See, e.g.*, Ex. 8, at DEFESI_142122.
[20] Ex. 3, at DEF_001600.
[21] *Id.* at DEF_001607 (noting that in a traditional factoring company model, "[p]rofitability lies in the difference between the rate at which the company could borrow funds and the discount rate it would use to determine the prices it offers payees for [] their future benefits").
[22] *Id.* at DEF_001600; Ex. 6, at DEFESI_007485.
[23] Ex. 6, at DEFESI_007485 ("Commutation model with GAAP, Stat and tax benefits"); *see also id.* at DEFESI_007487–88 ("immediate pickup after factoring of purchase price minus reserve" and "GAAP impact on consolidated basis is similar to commutation: immediate income pickup").
[24] Ex. 3, at DEF_001602.
[25] *Id.* at DEF_001606.
[26] *Id.*
[27] *Id.*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

regular mailings. Defendants also had information about their annuitants' SSA payment streams that they could filter in deciding whom to solicit, such as by targeting only those whose remaining benefits met the floor for a profitable transaction, and whom to exclude, such as minors, workers' compensation annuitants, and others they wished to screen out from their direct marketing.[28] There was little cost or risk for Defendants in soliciting their own annuitants; as the saying goes, they "were shooting fish in a barrel."

Defendants used their own annuitant data for market research. To understand the discount rates of third-party factoring companies, they analyzed the discount rates they offered to Symetra annuitants.[29] Symetra's background in pricing SSAs given annuitants' medical conditions also gave the company a leg up in purchasing life-contingent SSA payments; as Symetra noted, "[m]edical underwriting expertise for life contingent assets allows for purchase of longer tail life contingent assets."[30] But Symetra and SABSCO did not use their unique information to the advantage of their annuitants.[31] They did not price their "funding product" as a lifeline for those annuitants who had experienced an unanticipated life event or crisis.

## D.   Defendants Solicit the Injury Victims They Had Committed to Protect.

Defendants had more than their annuitants' contact information: they had their trust. Defendants intentionally leveraged their reputation and prior history with their annuitants in marketing. Internally, Symetra understood that its annuitants' trust provided it a "[c]ompetitive [a]dvantage[]."[32] And SABSCO could lean on annuitants' relationship with its sister-company: "SABSCO has a significant competitive edge over other funding companies in that it can leverage Symetra's reputation for quality and integrity to gain support[.]"[33]

---

[28] *See, e.g.*, *id.*

[29] *See id.*

[30] Ex. 6, at DEFESI_007485; Ex. 10, at DEFESI_009116 ("Benefits of life contingency[:] More skilled at pricing breakeven point for life contingent.").

[31] Although Defendants' Fed. R. Civ. P. 30(b)(6) designee denied their possession of medical information regarding class members, this is demonstrably incorrect. *See* Ex. 11, at p. 98. Indeed, Defendants used precisely such medical information at the deposition of Plaintiff Renaldo White a few days later. Ex. 12, at pp. 105–08. Plaintiffs are meeting and conferring with Defendants for the provision of an adequate and knowledgeable Fed. R. Civ. P. 30(b)(6) designee.

[32] Ex. 6, at DEFESI_007485 (slide "Competitive Advantages" states "Symetra reputation and clients – Trusted by clients"); Ex. 10, at DEFESI_009116 ("We are . . . a company you know and trust.").

[33] Ex. 3, at DEF_001606; *see also id.* at DEF_001614 (claiming "SABSCO's reputation for integrity, empathy and doing what's right for its customers means that SABSCO stands apart in the marketplace. Whereas many companies

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Before it entered the market, Symetra determined that its own "Structured Settlement Marketing Pool" consisted of a "[p]otential pool" of 40,000 annuity contracts for which Symetra was holding $5.7 billion in reserves that could be released.[34] In 2005, SABSCO and Symetra began sending their annuitants quarterly direct mailings and/or emails—the maximum permitted—advertising Defendants' "funding service."[35] They sent letters to all eligible annuitants four times per year, as well as newsletters at various intervals.[36] And they tracked these campaigns.[37]

By 2009, Symetra was making 23,500 "client touches per quarter" consisting of "client letters, cards, thank you notes and follow-up phone calls."[38] Defendants' aggressive solicitation campaign stressed its relationship of trust and promised to watch out for annuitants' best interests. For example:

- 2006 solicitations advised that pursuing a factoring transaction, "is as simple as contacting us to discuss settlement options available to you[,]"[39] and that, at SABSCO, "our top priority is to help you understand your options by providing the information and guidance you need."[40]

- 2008 marketing letters advised, "[w]ith SABSCO, you have the backing of a company that *you already know and trust*—one with more than a half-century of financial services experience. *We'll be your advocate*, working hard to clear a path to the bright new future you envision."[41] Another 2008 letter claimed: "When it comes to financial services, *it's important to work with a company that you know and trust*—a company like Symetra with more than 30 years of experience helping structured settlement recipients like you build a secure financial future."[42] Defendants' other solicitation schemes that year included a "Birthday Card" advertisement that promoted SABSCO as "[y]our friends[.]"[43]

- In 2009, Defendants' solicitation letters again stressed the message that, "[w]ith SABSCO, you have the backing of a company *you already know and trust*" and, again, "[w]e'll *be your advocate*[.]"[44] Another 2009 form letter repeated to annuitants that,

---

in this industry are predatory in nature, with high-pressure sales forces pushing customers for quick decisions, SABSCO works collaboratively with its customers to find the best solution.")

[34] *See* Ex. 6, at DEFESI_007496; Ex. 3, at DEF_001600 (Symetra will "use the commuted value to close its purchase agreement with" the annuitant).

[35] Ex. 13, at DEFESI_009715.

[36] Ex. 14, at DEFESI_008441 (marketing practices and communication frequency 2013 and 2014); Ex. 15; Ex. 16, at DEFESI_016240; Ex. 17, at DEFESI_032093.

[37] *See, e.g.*, Ex. 8, at DEFESI_142121; Ex. 11, at pp. 94–95.

[38] Ex. 6, at DEFESI_007497.

[39] Ex. 18.

[40] Ex. 19, at DEF_001420.

[41] Ex. 20, at DEFESI_018825 (emphasis added).

[42] *Id.* at DEFESI_018826 (emphasis added).

[43] Ex. 21, at DEF_001427.

[44] Ex. 22, at DEFESI_004625 (emphasis added).

PLS.' MOT. FOR CLASS CERTIFICATION - 7
(2:20-cv-01866-MJP)

"[w]hen it comes to financial services, ***it's important to work with a company that you know and trust***[.]"[45]

- These same themes were again apparently repeated through 2011, when form letters again stressed: "[***I***]***t's important to work with a company that you know and trust***[.]"[46] Another 2011 form communication again promised annuitants stated: "With SABSCO, you have the backing of a company ***you already know and trust*** . . . . ***We'll be your advocate***[.]"[47]

In 2011, Symetra's income from factoring began to decline. In response, it left "no stone unturned" to regain its market share in factoring Symetra-issued structured settlements and "to consistently reach [their] income goals[,]"[48] and, in 2012, Symetra concluded that "a more assertive approach to customer engagement [is] necessary."[49] As the "pool" of available annuitants to solicit dwindled, Defendants grew yet more aggressive. Symetra decreased its estimate of its marketing pool to approximately 20,000 contracts by 2014-2015, declining to 16,000 by 2016, and 13,518 by 2020.[50] As the "pool" of "marketable payees" continued to decline, Defendants determined, "we need to maximize our marketing efforts to reach our revenue goals."[51]

In 2014, Defendants "reintroduced" SABSCO under the Symetra "banner" to trade on its trusted position as insurer who issued their annuity.[52] The effort was clear—a need "to drum up SABSCO business" through more aggressive marketing.[53] The 2014 business plan called for emails to *all contract holders* in Symetra's database, as well as direct mail marketing to every remaining contract holder, emphasizing that they were "a company you know and trust."[54] Defendants contemplated an aggressive "cold-call" campaign.[55, 56] Defendants implemented bonus

---

[45] *Id.* at DEFESI_004626 (emphasis added).
[46] Ex. 23, at DEF_001776 (emphasis added).
[47] *Id.* at DEF_001777 (emphasis added); *see also, e.g.*, Ex. 24, at DEFESI_094410-11.
[48] Ex. 10, at DEFESI_009114.
[49] Ex. 25, at DEFESI_054674.
[50] Ex. 26, at DEFESI_102797; Ex. 13, at DEFESI_009715 (noting marketable policies declined by 12,000, or 26.7%, between 2008 and 2014); Ex. 8, at DEFESI_142120 (noting approximately 20,000 "marketable" payees by 2015); Ex. 27, at DEFESI_015153 (noting that since 2008 the number of eligible policies had declined over 30%); Ex. 28, at DEFESI_116647 ("Looking [a]head" to 2020 and stating "[d]eclining pool of payees.").
[51] *See, e.g.*, Ex. 8, at DEFESI_142120.
[52] Ex. 10, at DEFESI_009116–17; *see also* Ex. 29, at DEFESI_130418; *see, e.g.*, Ex. 8, at DEFESI_142126.
[53] Ex. 30, at DEFESI_019007.
[54] Ex. 10, at DEFESI_009116–17 ("We are . . . a company you know and trust.").
[55] Ex. 31; Ex. 32; Ex. 13, at DEFESI_009703, 009707.
[56] *See, e.g.*, Ex. 8, at DEFESI_142122–24 (discussing initiatives to improve revenue such as "Thank You" cards and "Extended Life Contingent marketing"); *id.* at DEFESI_142124 (describing initiative to "[i]mprove [r]evenue" by calling "each marketable payee who has Life Contingent payments remaining or has sold only externally"); *id.* at DEFESI_142131.

PLS.' MOT. FOR CLASS CERTIFICATION - 8
(2:20-cv-01866-MJP)

and incentive programs.[57] And continuing into 2015, Defendants pursued this and other "[a]dditional [i]nitiatives to [i]mprove [r]evenue."[58]

Throughout, SABSCO and Symetra continued to trade on their relationship of trust and confidence and omitted to disclose that their motive in the factoring business was profit.

- A 2014 FAQ advised annuitants to call SABSCO first, because it "is an affiliate of [Symetra], the insurer that holds your structured settlement. Working with SABSCO lets you stay with a company you know and trust. . . . Symetra has served customers fairly and responsibly for more than 50 years."[59] It affirmed that SABCO was committed to "customer advocacy, fair treatment and competitive pricing."[60] A 2014 e-mail solicitation stressed "SABSCO is an affiliate of [Symetra], the company that issues your structured settlement payments."[61] And it stressed "you'll stay with a company that *you already know and trust*."[62]

- In 2015, Defendants' solicitations still insidiously played on the pre-existing relationship with class members.[63] The "Brighter Days Ahead" solicitation stressed the relationship between SABSCO and Symetra, their capacity to offer a "better purchase price," with "less paperwork and hassle," and staying with "a company you already know and trust," and "your information stays private and secure."[64] Defendants' "See the Difference" solicitation similarly stressed again the relationship between SABSCO and Symetra, a "better purchase price," and staying with "a company you already know and trust, and your privacy remains secure."[65]

- Another 2015 advertisement advised that if annuitants were struggling with debt, SABSCO "may be able to help."[66] It advised again that it was an affiliate of Symetra, "the company that issues your structure settlement payments" and, because of this relationship, could generally offer "a better purchase price."[67]

- Another 2015 mailer specific to "life-contingent payments" advised that SABSCO were "experts at pricing life-contingent payments" which "can mean thousands of dollars more in your pocket."[68]

And Defendants knew that once an annuitant factored, it was more likely that they would engage in future factoring transactions, targeting communications at hopeful repeat annuitants.[69]

---

[57] *See, e.g., id.* at DEFESI_142127.
[58] *See, e.g., id.* at DEFESI_142122–24.
[59] Ex. 33.
[60] *Id.*
[61] Ex. 34, at DEFESI_029746.
[62] *Id.* (emphasis added).
[63] Ex. 13, at DEFESI_009710; Ex. 8, at DEFESI_142120.
[64] Ex. 35, at DEFESI_102861; *see also, e.g.,* Ex. 13, at DEFESI_009710; Ex. 8, at DEFESI_142145 (indicating that the "Brighter Days Ahead" solicitation was developed and executed).
[65] Ex. 36, at DEFESI_040765; *see also, e.g.,* Ex. 13, at DEFESI_009710; Ex. 8, at DEFESI_142145 (indicating that the "See the Difference" solicitation was developed and executed).
[66] Ex. 37, at DEFESI_010274; *see also* Ex. 38.
[67] *Id.*
[68] Ex. 39, at DEF_001480.
[69] *See* Ex. 40, at DEFESI_005468.

PLS.' MOT. FOR CLASS CERTIFICATION - 9
(2:20-cv-01866-MJP)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Throughout, SABSCO and Symetra's marketing plans, templates, and call scripts all stressed that they were a company annuitants could trust and that they knew.[70] SABSCO and Symetra promised to *advocate* for their annuitants, provide *full transparency*, "provide a better purchase price," and that there would be less hassle.[71] But Defendants omitted to reveal to class members that they were motivated by their own profit interest. Defendants' solicitations did not disclose their conflict of interest. Defendants' solicitations did not disclose that they benefitted by getting off-risk and generating substantial revenue. And Defendants did not reveal that, for many class members, the underlying agreements prohibited assignment in all circumstances.

### E.   Defendants' Conduct is Condemned in the SSA Industry.

The tension between Defendants' roles as annuity issuer and obligor—and the factoring business—was present from the launch of the business. Defendants anticipated criticism of their engaging in factoring transactions on SSAs they had previously issued. They prepared canned responses to explain their about-face ("In the past, Symetra/Safeco has actively opposed 'factoring'. What's changed?")[72] and the contradiction between the dual roles of issuer and buyer ("Isn't it a contradiction, almost 'shifty' or 'two-faced', to have a structured settlement business and a funding business?").[73]

The backlash to Defendants' factoring was swift. Defendants had been members of the National Structured Settlement Trade Association ("NSSTA"), an industry organization dedicated to promoting the "growth, establishment, and preservation of structured settlements in order to provide long-term financial security to personal injury claimants and their families through periodic payments."[74] As outcry over Defendants' activities grew within the structured settlement

---

[70] Ex. 29, at DEFESI_130418 ("We are experienced, friendly and helpful—a company you know and trust."); Ex. 22, at DEFESI_004627; *see generally* Ex. 11, at pp. 127–28, 164–80.

[71] Ex. 29, at DEFESI_130418 ("SABSCO can provide a better purchase price than other factoring companies" and "Staying with SABSCO means less paperwork and hassle for you."), DEFESI_130420 ("Why work with SABSCO? Customer advocacy. Fair treatment. Competitive pricing. Full transparency into the process."); Ex. 22, at DEFESI_004625 ("We'll be your advocate[.]").

[72] Ex. 3, at DEF_001668.

[73] *Id.* at DEF_001669; *see also id.* at DEF_001670 ("Entering this marketplace may be a sensitive issue and elicit negative reactions because of Symetra's prior opposition to factoring."); *id.* at DEF_001672 ("In the past, Symetra has actively opposed 'factoring[.]'").

[74] *Who We Are*, Nat'l Structured Settlements Trade Ass'n, https://nssta.com/about/who-we-are (last visited Feb. 17, 2022).

PLS.' MOT. FOR CLASS CERTIFICATION - 10
(2:20-cv-01866-MJP)

industry, NSSTA amended its bylaws to prohibit membership by an entity that engaged in activities "incompatible" with its mission.[75] Symetra promptly resigned.[76] Its factoring business was incompatible with NSSTA's mission "to support the use of structured settlements as a way to satisfy the immediate and long[-]term economic needs" of annuitants.[77]

Symetra also faced criticism from outside NSSTA. One potential business partner described Symetra's factoring business as "unnerving";[78] others refused to do business with Symetra due to discomfort with their factoring activities.[79] Later, Defendants engaged a public relations firm to draft "crisis communications" in response to their expanding factoring activities.[80]

It didn't have to be this way. Other annuity issuers, like Berkshire Hathaway, issued SSAs and allowed its annuitants to exchange their future payments for a lump sum. But their behavior was dramatically different than Symetra. Berkshire actively opposed factoring in the secondary market but would permit commutations in situations of true hardships. It did so to protect its annuitants from predatory factoring companies with far worse rates.[81] It did not market to its annuitants. Symetra, in contrast to other annuity issuers,[82] compared itself to third-party factoring companies with fundamentally different duties, expenses, and business models.[83]

All SSAs include standard anti-assignment clauses required to preserve the tax advantages of an SSA.[84] Some settlement agreements contain an even more restrictive ban on assignment, or "Power Language," that declares annuitants "shall not have the *power* to sell, mortgage, anticipate or encumber these payments, or any part thereof, by assignment or otherwise."[85] Egregiously,

---

[75] Ex. 41, at DEFESI_018768; *see also, e.g.*, Ex. 42, at DEFESI_003587.

[76] Ex. 43.

[77] Ex. 41, at DEFESI_018768; *see also* Ex. 44, at DEFESI_101536 (responding to the question "[d]idn't the NSSTA discontinue your membership because you are involved with the factoring industry, and they believe factoring is ultimately harmful to their general mission?"); Ex. 45, at DEFESI_136317.

[78] Ex. 40, at DEFESI_005468.

[79] *See, e.g.*, Ex. 46, at DEFESI_064094 ("In the structured settlement marketplace, factoring is a very controversial topic and some agents have refused to do business with Symetra since we launched the Funding Company."); Ex. 47 (seeking assistance to put a "positive spin" on factoring).

[80] Ex. 48.

[81] Ex. 49, at DEFESI_023252–54; Ex. 46, at DEFESI_064094 ("The fact that we offer factoring has impacted our marketing role for Berkshire[.]").

[82] Ex. 45, at DEFESI_136317-18.

[83] *Cf.*, *e.g.*, Ex. 14, at DEFESI_0084230–32.

[84] *See* 26 U.S.C. § 130. The language from Plaintiff Renaldo White's SSA states: "None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered." Ex. 50, at PL_00000409.

[85] Compl. ¶¶ 48, 80; Ex. 50, at PL_00000405 (emphasis added).

PLS.' MOT. FOR CLASS CERTIFICATION - 11
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants solicited the factoring of SSAs even where they contained "Power Language" which they themselves had previously contended barred factoring.

In fact, Defendants brought up these Power Language clauses when it stood to benefit from them. In court, Defendants actively opposed third-party attempts to factor their annuity contracts. *See, e.g.*, *In re Rapid Settlements Ltd's Application for Approval of Structured Settlement Payment Rights*, 133 Wn. App. 350, 367, 136 P.3d 765 (2006) ("Symetra contends various contractual anti-assignment provisions render the transfers ineffective"); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, No. E040289, 2007 WL 1576437, at *4 (Cal. Ct. App. June 1, 2007) (same); *In re Foreman*, 365 Ill. App. 3d 608, 611–12, 850 N.E.2d 387, 390(2006) (same). There, Defendants argued that the anti-assignment provisions prohibited the transfer. But when Defendants stood to benefit, they made no mention of the Power Language prohibitions on assignment. Indeed, in their factoring transactions, Defendants even added language to their proposed court orders to ensure that the anti-assignment provisions would remain in effect, apparently for their benefit.

Factoring was highly profitable for Defendants. From 2005 through the first quarter of 2009, the scheme yielded $170 million in purchases, $55.5 million in GAAP revenue, and $42.4 million in GAAP income.[86] And this was prior to the peak of its factoring business in 2010-2011,[87] with 2011 operating income passing $16.8 million.[88] As set forth in more detail below, Expert Zass estimates that Defendants profit easily exceeded $70 million at the expense of the class.

## IV.   LEGAL STANDARD

To certify a class, the four prerequisites of Rule 23(a) must be met: numerosity, commonality, typicality, and adequacy of representation. *Ngethpharat v. State Farm Mut. Ins. Co.*, 339 F.R.D. 154, 161–62 (W.D. Wash. 2021) (Pechman, J.) (citing *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 512 (9th Cir. 2013); Fed. R. Civ. P. 23(a)).

The proposed class must also satisfy one of the Rule 23(b) factors. Here, Plaintiffs seek certification under Rule 23(b)(3), which authorizes class certification if the district court determines that common questions of law or fact "predominate over any questions affecting only

---

[86] Ex. 6, at DEFESI_007480, 007482.
[87] Ex. 13, at DEFESI_009715.
[88] Ex. 51, at DEFESI_054662.

PLS.' MOT. FOR CLASS CERTIFICATION - 12
(2:20-cv-01866-MJP)

individual members," and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two requirements are commonly referred to as "predominance" and "superiority." *See, e.g.*, *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 n.1 (9th Cir. 2010).

## V.   ARGUMENT

### A.   Rule 23(a) Is Satisfied.

#### 1.   Numerosity

The numerosity requirement is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980).

Plaintiffs meet the numerosity requirement. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (joinder is impractical with "hundreds or thousands" of class members). Defendants' interrogatory responses state that SABSCO purchased SSA payments from 1,961 Symetra annuitants during the class period.[89] Class members and subclass members are easily discerned through "objective criteria," *Agne*, 286 F.R.D. at 566, and their identity (address, etc.) in records maintained by Defendants.[90]

#### 2.   Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation omitted). Even a single common question "apt to drive the resolution of the litigation" is sufficient to satisfy the commonality requirement, *id.* at 350; whether a question is apt to drive resolution of the case, in turn, "necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). The following common questions of fact will drive the resolution of this litigation:

---

[89] Ex. 52. Defendants' responses also demonstrate that the identity of subclass members may be ascertained from their records.
[90] *Id.* at p.2.

PLS.' MOT. FOR CLASS CERTIFICATION - 13
(2:20-cv-01866-MJP)

***a. RICO Enterprise and Conspiracy:*** Whether Defendants engaged in a scheme to defraud, and whether they carried it out through a pattern of predicate mail fraud, are common issues. Commonality is easily found in civil RICO cases; whether Defendants also formed a civil conspiracy is similarly a common issue grounded in the same core of facts. *See, e.g.*, *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 255 (C.D. Cal. 1988) ("The issues of law and fact in making out a RICO violation will generally be common to all Plaintiffs' claims[.]"); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231–32 (D.N.J. 2005) (noting that "even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation" and finding commonality satisfied in a RICO class action); *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1075–76 (W.D. Pa.1991) (finding commonality where named plaintiffs and class brought RICO and fiduciary duty claims).

***b. Fiduciary Status***: SABSCO and Symetra's fiduciary status presents common questions. SABSCO and Symetra had the same relationship with all class members: Symetra issued the class members' SSA and SABSCO acted as obligor, under an arrangement that provided Defendants with substantial tax benefits in exchange for providing a future income stream for vulnerable persons. Whether Symetra had a fiduciary duty to the annuitants of SSAs it issued for the protection of their financial well-being is a question common to all class members. And whether SABSCO owed a fiduciary duty to class members as obligor and owner of the annuities obtained for their long-term benefit will also be resolved for the class as a whole.

***c. Misrepresentations and Omissions***: Defendants' solicitation of class members employed form communications with common omissions and misrepresentations. The most critical omission is common to the class: Defendants concealed that they sought to get "off risk" for their own financial benefit. This omission was coupled with misrepresentations—likewise common to the class—that Defendants would protect their best interests as companies class members could trust. Commonality is satisfied where, as here, the same omissions or misrepresentations are at issue. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015); *Beebe v. Pac. Realty Tr.*, 99 F.R.D. 60, 65 (D. Or. 1983); *Pistoll v. Lynch*, 96 F.R.D. 22, 28

PLS.' MOT. FOR CLASS CERTIFICATION - 14
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(D. Haw. 1982). This is "particularly true" where "the claims are primarily grounded on misrepresentations and omissions contained in a common core of documents." *In re United Energy Corp.*, 122 F.R.D. at 254.

**d. Unfair or Deceptive Conduct:** Similarly, whether Defendants' conduct was unfair or likely to deceive a reasonable consumer presents another common question. This is because the test for whether a practice is unfair or deceptive under the Washington Consumer Protection Act ("CPA"), RCW 19.86.020 et seq., is measured by an objective test. *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 168 Wn.2d 421, 442, 228 P.3d 1260 (2010) (a defendant has committed deception under the CPA "if there is a representation, omission or practice that is likely to mislead a reasonable consumer") (citation omitted).

**e. Self-Dealing and Disloyalty:** Defendants actively solicited their own annuitants, vulnerable people whom they were supposed to protect, to benefit their own bottom line. In purchasing payment streams from each member of the proposed class for pennies on the dollar, Defendants prioritized their own profit motive over the interests of annuitants. Likewise, Defendants used confidential information regarding class members—information that they obtained through their roles as annuity issuer and obligor—for a different purpose, that of predatory solicitation. Whether Defendants' use of class members' confidential information for the solicitation of factoring transactions breached their duties of confidentiality and loyalty is a question common to all members of the putative class. Where, as here, the claims arise from a "common course of conduct" by defendants common to the putative class, commonality is easily satisfied. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559–60 (9th Cir. 2019); *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182–83 (9th Cir. 2015).

**f. Unjust Enrichment:** Symetra's relationship with every member of the putative class is identical: It issued an annuity for their long-term protection. Symetra's course of conduct was likewise the same with respect to each member of the putative class. Whether Symetra knowingly extracted a financial benefit from class members under circumstances that make it inequitable for Symetra to retain that benefit are common issues.

PLS.' MOT. FOR CLASS CERTIFICATION - 15
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*g. Breach of Duty:* Whether Defendants' conduct constituted a breach of their duties in contract or in tort is a common question that will be answered classwide. As described above, commonality is met where, as here, the case targets a course of conduct by defendant common to all members of the class.

### 3. Typicality

The third prerequisite under Rule 23(a), typicality, is intended "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted). This does not require "that all class members suffer the same injury as the class representative." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Rather, "[t]he requirement is permissive, such that representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted).

Here, the proposed class representatives' interests are typical of and closely aligned with those of the absent class members and subclass members. Both named Plaintiffs held SSAs obtained by Defendant SABSCO from Defendant Symetra for Plaintiffs' benefit. Defendants then solicited and purchased SSA income streams from both Mr. White and Mr. Nadeau. Because the proposed class representatives' claims rely on facts and legal theories identical to those of the class, the typicality requirement is satisfied. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality satisfied where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (citation omitted); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 661 (S.D. Cal. 2010) ("[p]laintiffs have the same alleged injury as other class members and were subjected to and injured by the same relevant conduct") (certifying national RICO class).

PLS.' MOT. FOR CLASS CERTIFICATION - 16
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

4.      **Adequacy**

The final Rule 23(a) requirement, adequacy, requires that "[f]irst, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Ngethpharat*, 339 F.R.D. at 166 (alteration in original) (citation omitted); *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

With respect to the first question, each of the class representatives here has an incentive to vigorously represent similarly situated annuitants. That is because "each potential plaintiff has the same problem." *Hanlon*, 150 F.3d at 1021. The proposed class representatives have already demonstrated they are committed to vigorously pursuing this action, devoting substantial time to its prosecution; they have produced documents, reviewed pleadings, and appeared for deposition (or soon will).[91] *See, e.g.*, *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 76 (S.D.N.Y. 1999); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM (JCx), 2011 WL 3503264, at *15 (C.D. Cal. Mar. 29, 2011); 7A Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1766 (4th ed. 2021).

Pursuant to Rule 23(g)(1)(A), the factors that the Court must consider in appointing class counsel are "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Here, the class representatives' counsel have the requisite qualifications to vigorously pursue the classes' claims and are more than "qualified and competent." *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 549, 554 (N.D. Cal. 1998). Plaintiffs' counsel developed this case and have litigated it since inception. Plaintiffs' counsel possess extensive experience in handling complex commercial litigation,

---

[91] Ex. 53; Ex. 54.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

including class actions and SSA agreements.[92] This Court should therefore appoint Keller Rohrback L.L.P., Edward Stone Law PC, and Marcus & Auerbach LLC as Class Counsel.

The second question in the adequacy inquiry is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members." *Hanlon*, 150 F.3d at 1020. The classes here contain no intraclass conflicts of interest at all, let alone "fundamental" ones. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015). The class representatives, like all class members, held SSAs issued by Symetra, which were subsequently purchased by SABSCO, and were injured by the same course of conduct by Defendants. Rather than conflicting, all class members share an interest in establishing Defendants' liability and maximizing the recoverable damages in this case.

**B.     Rule 23(b)(3)'s Predominance Requirement Is Satisfied.**

The proposed class and subclass meet the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). The predominance inquiry under Rule 23(b)(3) is qualitative and "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Predominance examines the "more important questions" in the litigation and asks whether they may be proven or disproven classwide. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). If so, the predominance requirement is satisfied, for important questions "are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Id.*

Here, the most important questions in this litigation are common to the class (and subclass). The important questions of liability with respect to Plaintiffs' claims will predominate over any individualized issues. "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund,*

---

[92] Exs. 55, 56, 57.

PLS.' MOT. FOR CLASS CERTIFICATION - 18
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). Viewed qualitatively, the weightiest issues turn on common questions of law and will be resolved by common proof.

Under Rule 23(b), the Plaintiffs must also offer a proposed damages model consistent with the theory or theories of liability. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see also Leyva*, 716 F.3d at 513–14; *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). Differences in damages calculations as between class members do not, however, defeat predominance. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015); *Jimenez*, 765 F.3d at 1167. "To gain class certification, [p]laintiffs need to be able to allege that their damages arise from a course of conduct that impacted the class. But they need not show that each members' damages from that conduct are identical." *Just Film, Inc.*, 847 F.3d at 1120.

As demonstrated in the Zass Report,[93] Plaintiffs offer four methodologies to identify and measure the class-wide injuries flowing from their several claims:

- ***Expectation Damages***: This methodology computes the loss to the putative class by comparing what class members would have received under their SSAs versus the purchase price paid in each factoring transaction, adjusting payments for present value per the IRC-mandated valuation methodology, 26 U.S.C. § 7520.

- ***Fair Commutation Damages***: This methodology computes the loss to the putative class by comparing the discount rate SABSCO used to determine the purchase price paid to each class member with a benchmark fair value discount rate that was offered by at least one other life insurance company willing to provide a lump sum commutation to payees.

- ***GAAP Reserve Damages***: This methodology compares Symetra's GAAP ("Generally Accepted Accounting Principles") reserve values to the purchase price paid to class members in each factoring transaction. Defendants' documents indicate that they used a GAAP revenue measure as their principal eligibility criterion and profitability evaluation of potential factoring transactions.

- ***Statutory Reserve Release Damages***: This methodology compares the Statutory Reserve (Commutation Value) paid by Symetra to SABSCO with the purchase price paid to class members in each factoring transaction. Statutory accounting is a regulatory, solvency-based accounting regime used by the insurance industry.

---

[93] Ex. 1, at pp. 5, 6–15.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1.     **Common Issues Predominate with respect to Plaintiffs' Conspiracy Claims**

    a.     **RICO Claims**

The elements of a civil RICO claim are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's "business or property." 18 U.S.C. §§ 1964(c), 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–97 (1985). The critical elements of Defendants' liability will be established through common proof and predominate over individualized questions. The "important questions" respecting Plaintiffs' RICO claim will be proven classwide. This is because RICO liability "focus[es] on . . . [d]efendants' conduct." *Just Film, Inc.*, 847 F.3d at 1121 n.3.

      (i)     **Whether Defendants Conducted a RICO Enterprise Will be Subject to Class-wide Proof.**

Whether Defendants conducted a RICO enterprise will be established through common proof. Whether Defendants' relationship constituted a RICO enterprise will obviously be common to the class: the answer will be the same as to all members of the class. *See, e.g.*, 18 U.S.C. § 1961(4) ("enterprise" requirements); *Boyle v. United States*, 556 U.S. 938, 948 (2009) (same); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006), *motion to decertify denied*, 287 F.R.D. 590, 610 (C.D. Cal. 2012) ("[M]any of the liability questions in regards to plaintiffs' RICO claims can be resolved on a class-wide basis, including whether defendant was part of an association-in-fact enterprise operating an alleged scheme to defraud the class members. Proving these allegations will involve the same evidence and manner of proof as to the entire class.") (citation omitted).

Likewise, whether Defendants sought to perpetrate a fraud through a pattern of racketeering activity will be shown through common proof. This is a question to be answered classwide. Indeed, Defendants have contended that, across the board, there was nothing fraudulent, misleading, or otherwise impermissible about the business practices challenged in this lawsuit. As is well-recognized, whether Defendants' conduct constituted a common course of fraud presents the sort of question amenable to class treatment. *See, e.g.*, *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006); *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 447 (N.D. Cal. 2009);

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 541–42 (N.D. Cal. 2010). This is particularly

2   so in RICO cases and other cases sounding in conspiracy. *See, e.g.*, *In re Ins. Brokerage Antitrust*

3   *Litig.*, 282 F.R.D. 92, 106 (D.N.J. 2012); *In re United Energy Corp.*, 122 F.R.D. at 255; *In re Flat*

4   *Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999); *Varacallo*, 226 F.R.D. at 231–32;

5   *Hoffman Elec., Inc.*, 754 F. Supp. at 1075–76. As in the recent *Theranos* consumer fraud case,

6   "[a]s now structured, resolution of plaintiffs' claims will depend not upon individual experiences,

7   but rather upon defendants' alleged deception as to the efficacy of [their] program." *In re Ariz.*

8   *Theranos, Inc., Litig.*, No. 2:16-cv-2138-HRH, 2020 WL 5435299, at *5 (D. Ariz. Mar. 6,

9   2020), *aff'd in part, rev'd in part and remanded sub nom.*, *B.P. v. Balwani*, Nos. 20-15974, 20-

10   15976, 2021 WL 4077008 (9th Cir. Sept. 8, 2021)

11              **(ii)    Injury to Plaintiffs and Causation of Those Injuries Will**
                **Likewise be Established Classwide.**

12

13          With respect to Plaintiffs' civil RICO claim, "the measure of damages 'is the harm caused

14   by the predicate acts constituting the illegal pattern.'" *Just Film, Inc*, 847 F.3d at 1120 (quoting

15   *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 451 (9th Cir. 1991)). Here, evidence is available to

16   demonstrate that all or nearly all class members suffered what this Court termed "concrete financial

17   loss[es]" in surrendering their rights to future payments under the agreements. *White v. Symetra*

18   *Assigned Benefits Serv. Co.*, No. C20-1866 MJP, 2021 WL 3472408, at *10 (W.D. Wash. Aug. 5,

19   2021) (Pechman, J.). Plaintiffs offer two methodologies to measure this loss: "Fair Commutation

20   Damages" and "Expectation Damages."[94]

21          ***Fair Commutation Damages:***[95] As expert Zass opines, injury and damages may be

22   assessed based upon a "fair commutation rate" analysis. For each Plaintiff, this is calculated as the

23   "deal" they could have obtained had Defendants acted fairly as in their dual roles of issuer/assignee

24   and purchaser, instead of as a third-party "factoring" company with no pre-existing relationship

25   with class Plaintiffs. Expert Zass, a veteran in the field, has devised a common means to determine

26   damages on a class-wide basis using a common formula and common proof. *See, e.g.*, *Negrete*,

27

28   _____

[94] *Id.* at pp. 5, 11–15.
[95] *Id.* at pp. 5, 13–15.

PLS.' MOT. FOR CLASS CERTIFICATION - 21
(2:20-cv-01866-MJP)

238 F.R.D. at 494. Even were individualized differences in damages present, which they are not, the Ninth Circuit has reaffirmed repeatedly that they do not defeat class certification. *See Pulaski & Middleman, LLC*, 802 F.3d at 987; *Just Film, Inc.*, 847 F.3d at 1120.

Defendants may argue that individualized questions of causation defeat predominance. But Plaintiffs will establish causation on a class-wide basis as well. Causation is a straightforward inquiry where, as here, class members "are both the direct and foreseeable victims of the alleged fraud." *Waldrup v. Countrywide Fin. Corp.*, No. 2:13-cv-08833-CAS (AGRx), 2018 WL 799156, at *12–13 (C.D. Cal. Feb. 6, 2018) (citation omitted). Expert Zass's "Fair Commutation Damages" methodology eliminates any potential individual causation issues. This model looks to the discount rate Defendants offered by comparison to an issuer who offered an objectively fair commutation rate (or hardship rate). Individual questions Defendants will likely assert are rendered irrelevant. "Common issues frequently predominate in RICO actions that allege injury as a result of a single fraudulent scheme." *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009).

**Expectation Damages:**[96] As described above, the Expectation Damages methodology computes the loss to the putative class by comparing what class members would have received under their SSAs, adjusting payments for present value under the IRC-required method. Defendants will surely argue that individualized issues of reliance would predominate. Defendants are incorrect.

*First*, reliance is not an element of Plaintiffs' RICO claim. Rather, the Supreme Court has expressly rejected reliance as an element of a civil RICO claim predicated on mail fraud. *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 646 (2008). The Supreme Court explained that the civil RICO statute has no reliance requirement on its face, and a person may be injured "by reason of" another person's fraud even if the injured party did not rely on any misrepresentation. *Id.* at 648–49; *see also Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1259 (9th Cir. 2019).

---

[96] *Id.* at pp. 5, 11–13.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Second*, Plaintiffs will establish reliance through a class-wide common-sense inference of reliance. *Cohen v. Trump*, 303 F.R.D. 376, 385 (S.D. Cal. 2014) ("Courts have found that reliance can be established on a class-wide basis where the behavior of plaintiffs and class members cannot be explained in any way other than reliance upon the defendant's conduct.") (collecting cases). Indeed, courts have applied this common-sense inference to fact patterns as similar as annuity purchases and as different as bird seed. For example, in *Kennedy v. Jackson National Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 2524360 (N.D. Cal. June 23, 2010), the plaintiff alleged that the defendant annuity provider misrepresented the value of her annuity in its marketing materials and that RICO causation could be "shown through circumstantial evidence." *Id.* at *8. The court agreed that a "common sense" inference could arise, such that "[f]rom common proof on the materiality of the misrepresented or omitted facts, a fact-finder could infer that class members purchased [d]efendant's annuities based on deceptive practices," and "[t]hus, common questions predominate as to causation for [p]laintiff's RICO claim." *Id.* at *8–9.[97] Here, just as in *Kennedy*, one can infer that class members relied on Defendants' omissions and concurrent misrepresentations. Common sense dictates that had Defendants properly informed class members that they did not have class members' best interests in mind, class members would not have transacted with them. "[A] jury could infer on a class-wide basis that defendant's allegedly fraudulent marketing scheme is the cause of plaintiffs' injuries." *Negrete*, 287 F.R.D. at 612.

*Third*, class-wide reliance may be presumed in a case predicated in fraudulent omissions, as here. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972) (where a case "involv[es] primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery"); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). "[A] presumption of reliance is appropriate in a case involving primarily omissions because of the 'difficulty of proving a speculative negative—that the plaintiff relied on what was not said.'" *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 541 (N.D. Cal. 2015) (citations omitted). Because of Defendants' fraudulent

---

[97] *See also, e.g.*, *Waldrup*, 2018 WL 799156, at *12; *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 555 (S.D. Cal. 2017).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

omissions—their failure to inform class members about the conflict-of-interest and the anti-assignment provisions—that presumption of reliance applies here.

*Finally*, even if reliance were deemed an element, and even if no presumption were deemed applicable, reliance alone does not defeat predominance whether other common questions will be resolved be class-wide proof. "Regardless of whether plaintiffs are entitled to a presumption of reliance, class certification is appropriate if common questions predominate over individual questions of reliance." *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 697 (W.D. Wash. 1992) (citing *In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 806 (S.D. Cal. 1990)). Here, Plaintiffs allege a common course of wrongdoing based on the same misrepresentations and omissions, and, as such, individual issues of reliance do not preclude certification of the class. *In re MDC Holdings Sec. Litig.*, 754 F. Supp. at 806; *see also Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1460 (S.D. Cal. 1988) (holding that common course of conduct, through defendants' similar misrepresentations and omissions, creates common questions sufficient to certify the class even though the class was not entitled to a presumption of reliance).

### b.   Common Issues Predominate with Respect to Plaintiffs' Civil Conspiracy Claim

The elements of a claim for civil conspiracy under Washington law are: "that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy[,]" together with proximately resulting damage. *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000). Common proof will again predominate with respect to this claim. As to the first element, whether Defendants combined to accomplish their purpose through unlawful means will be common across class members. The second element focuses solely on Defendants' agreement, which will be the same across all class members as well. Finally, as explained above, whether the class members were injured, and whether their injuries were proximately caused by Defendants' conduct, are questions capable of class-wide resolution.

PLS.' MOT. FOR CLASS CERTIFICATION - 24
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2. **Common Issues Predominate with Respect to Plaintiffs' Consumer Protection Act ("CPA") Claim**

For the reasons set forth in Plaintiffs' Motion for Partial Summary Judgment Regarding Choice of Law, Washington law applies to Plaintiffs' consumer protection claims. Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" RCW 19.86.020. The elements of a CPA claim are: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the plaintiff in its business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Common issues predominate with respect to Plaintiffs' CPA claim.

*Unfair or Deceptive Act or Practice:* Whether Defendants engaged in a deceptive act or practice will be subject to common proof. "To prove that a practice is deceptive, neither intent to deceive nor actual deception is required." *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166, 159 P.3d 10 (2007), *aff'd sub nom.*; *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 204 P.3d 885 (2009). Rather, the test is whether the act had a capacity to deceive. *Leingang v. Pierce Cnty. Med. Bureau*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997); *Panag*, 166 Wn.2d at 47. Plaintiffs allege that Defendants' omissions had capacity to deceive: Defendants asserted, *inter alia*, that they were trustworthy, would act as class members, and had their best interests at heart. Defendants' solicitations did not disclose their conflict of interest, that they were motivated by profit, and that they were not acting as advocates protecting class members' interests. This Court has already stated these and similar omissions qualify as deceptive. *White*, 2021 WL 3472408, at *9–11.

*Trade or Commerce:* That Defendants' unfair practices occurred in trade or commerce will be established through common proof. "Trade" and "commerce" under the CPA broadly encompass "any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). Like insurance contracts, the property-casualty insurance policies here are unquestionably "commercial transaction[s]," *Bryant v. Country Life Insurance Co.*, 414 F. Supp. 2d 981, 1003 (W.D. Wash. 2006), and thus this element can be deemed established as to the class. *See Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1238 (W.D. Wash. 2008).

*Public Interest Impact:* Whether Defendants' actions had a public impact will similarly be a common question. In assessing public impact, Washington courts have taken into account various factors adjusted to the circumstances of a particular case, such as the context in which the alleged violation occurred.[98] Those factors, however, will not vary class member to class member. The public-interest element also can be established as a matter of law in cases relating to insurance, because "the 'business of insurance is one affected by the public interest.'" *Id.* (quoting RCW 48.01.030). As with the trade-or-commerce element, the distinction between property-casualty policies and factoring transactions arising from SSAs does not justify a distinction for purposes of measuring the public interest.

*Injury and Causation:* Injury and causation will likewise be the subject of common proof. Under the Washington CPA, a plaintiff who has been "injured in his or her business or property by a violation" may recover actual damages. RCW 19.86.090; *Ambach v. French*, 167 Wn.2d 167, 171, 216 P.3d 405 (2009). Here, this Court has found Plaintiffs may show injury (*inter alia*) where annuitants "gave up payment rights in exchange for a substantially reduced lump sum." *White*, 2021 WL 3472408, at *11. Importantly, injury is distinct from damages and "[n]o monetary damages need be proven [to state a CPA claim] so long as there is some injury to property or business." *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002). What is more, the causation and injury elements are satisfied with proof that defendants' conduct deprived plaintiff of "minimal" use of property. *Panag*, 166 Wn.2d at 57; *see also Ambach*, 167 Wn.2d at 171–72 ("[T]he injury involved need not be great, or even quantifiable[.]") (citation omitted); *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990) (same). For purposes of the certification of the CPA claim here, therefore, Plaintiffs need only prove some minimal deprivation of their property. This is effectively indisputable: All Plaintiffs lost their right to future SSA payments. There is a deprivation of property—the funds Plaintiffs would have otherwise received.

---

[98] Public interest impact is determined by the trier of fact from several factors, depending upon the context in which the alleged acts were committed. Washington courts have adjusted the test according to the circumstances of a case. *Hangman Ridge*, 105 Wn.2d at 789–90; *see also Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 742, 733 P.2d 208 (1987).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs will also, however, prove monetary damages on a class-wide basis. As noted *supra*, the Zass Report establishes two potential measures applicable to Plaintiffs' CPA claim: the "Expectation Damages" methodology and the "Fair Commutation Damages" methodology. As noted *supra*, there is no issue of individualized reliance with the "Fair Commutation Damages" methodology. Nor does the "Expectation Damages" methodology present any issues of individualized reliance. As noted *supra*, whether a practice is unfair or deceptive under the CPA is measured by an objective standard, *Columbia Physical Therapy*, 168 Wn.2d at 442, and there are no individualized issues of reliance under an objective standard, *Yokoyama*, 594 F.3d at 1090 n.1. As also established *supra*, omission-based claims, as here, are subject to a rebuttable presumption of reliance under the CPA. *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 197 Wn. App. 875, 890, 391 P.3d 582 (2017); *Blough v. Shea Homes, Inc.*, No. 2:12-cv-01493 RSM, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016).

Defendants may argue that common issues do not predominate with respect to Plaintiffs' CPA claim because the questions of injury and causation require individualized inquiries. Defendants would be mistaken for two reasons.

*First*, as noted above, whether a practice is unfair or deceptive under the CPA is measured by an objective standard. *Columbia Physical Therapy*, 168 Wn.2d at 442. Plaintiffs' claims thus do not turn on whether any individual annuitant was deceived, but rather whether Defendants' solicitations had the "capacity to deceive." *Id.* Given this objective standard, it is irrelevant whether a particular annuitant was deceived and no individualized inquiry is required. Indeed, the Ninth Circuit has repeatedly affirmed that where, as here, the claim arises under an objective, reasonable person standard, there are no individualized issues of causation or reliance. *See, e.g.*, *Yokoyama*, 594 F.3d at 1093 ("Because Hawaii uses an objective test to effectuate its remedial protection statute, the district court erred in holding that individual reliance issues make this case inappropriate for class certification."); *Pulaski & Middleman, LLC*, 802 F.3d at 985–86 ("when a

PLS.' MOT. FOR CLASS CERTIFICATION - 27
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

defendant puts out tainted bait" it is conclusively presumed that the defendant has caused an injury) (citation omitted).[99]

*Second*, because Plaintiffs' CPA claim is predicated on Defendants' omissions of material facts, individualized inquires with respect to causation are not required. Under Washington's CPA, causation for omission of material facts includes a rebuttable presumption of reliance. *Deegan*, 197 Wn. App. at 890. As such, the causation inquiry focuses on what the defendant concealed, which is "a question capable of generating a common answer across the class without substantial individualized inquiries." *Blough*, 2014 WL 3694231, at *13. Thus, "proof of reliance is not necessary in order to satisfy the CPA's causation element," and where plaintiffs allege an omission-based theory of fraud, class certification is regularly granted. *Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 629–30 (W.D. Wash. 2006).[100] The Ninth Circuit has affirmed certification of a Washington CPA class where, as here, the existence of a "class-wide policy or practice of non-disclosure . . . was a common question of fact that 'predominates over the exact interaction between individual [plaintiffs] and [defendants].'" *Ruiz Torres*, 835 F.3d at 1138.

### 3. Common Issues Predominate with Respect to Plaintiffs' Breach of Fiduciary Duty Claim

Washington law also applies to Plaintiffs' claim for breach of fiduciary duty. The elements of a claim of breach of fiduciary duty under Washington law are (1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury. *Miller v. U.S. Bank of Wash., N.A.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994). Common issues—fiduciary status, breach, and damages—predominate with respect to this claim as well.

*Fiduciary Status:* A fiduciary relationship exists where one party "'occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for.'"

---

[99] *See also, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 983 (stating that California consumer protection laws [UCL and FAL] each "allows plaintiffs to establish materiality and reliance [i.e., causation and injury] by *showing* that a reasonable person would have considered the defendant's representation material") (emphasis added); *see also Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 408 (N.D. Cal. 2021); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 566 (N.D. Cal. 2020); *Fitzhenry-Russell*, 326 F.R.D. at 613.

[100] *See also, e.g., Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 556 (W.D. Wash. 2019); *Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP (MANx), 2016 WL 1327474, at *11 (C.D. Cal. Apr. 5, 2016) ("[T]he presumption of reliance based on the identical material omission is sufficient basis of common proof for reliance and causation. Therefore, there are common issues among the class.").

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Liebergesell v. Evans*, 93 Wn.2d 881, 889–90, 613 P.2d 1170 (1980) (quoting *Restatement of Contracts* § 472(1)(c) (1932)). The question of duty here will be common classwide. Defendants had the same relationship with every member of the class: Symetra had that of annuity issuer, and SABSCO had that of purchaser/assignee with the duty to make payments to every member of the class. Whether these relationships gave rise to a fiduciary duty will be answered, in common, for the class as a whole given that Defendants admit to having the same relationship with each of the putative class members. Duty will also be a common issue insofar as Defendants also held themselves out as protecting the class members' interests, including through their promises to act as class members' "advocate," etc. There will be no individualized questions of duty. Rather, whether Defendants owed a fiduciary duty by virtue of their role as issuer, assignee, or by virtue of their promises to protect class members' interests, will be a common question that will drive the resolution of this litigation. *Cf. Liebergesell*, 93 Wn.2d at 889 (noting fiduciary relation has been found where one acts as an adviser, one party to the transaction has superior knowledge, *etc.*).

**Breach:** The question of breach will likewise be proven classwide. Plaintiffs' claim arises from a common course of conduct by Defendants towards whether that common course of conduct constitutes a breach of their fiduciary duties—particularly breach of the duty of loyalty—will be the subject of common, class-wide proof. The question of breach presents a common issue that will be resolved classwide. *See, e.g.*, *Estakhrian v. Obenstine*, 320 F.R.D. 63, 90 (C.D. Cal. 2017) (common questions predominated in action arising from alleged breach of fiduciary duty in solicitation of clients and failure to disclose material information).

**Injury and Proximate Cause:** Damages for Defendants' breach of fiduciary duties here can be measured in two alternative ways. Both methods are class-wide measures, creating another common issue supporting predominance and the advantages of class treatment.

*First*, damages for breach of fiduciary duties may be measured by the losses caused by a defendant's breach. *Roil Energy, LLC. v. Edington*, 195 Wn. App. 1030, 2016 WL 4132471, at *15 (2016). With respect to causation, "[t]he question, as phrased by Judge Learned Hand in *Barnes v. Andrews*, 298 F. 614 (S.[D.]N.Y. 1924), is whether 'the performance of the defendant's duties would have avoided loss, and what loss it would have avoided.'" *Senn v. Nw. Underwriters,*

PLS.' MOT. FOR CLASS CERTIFICATION - 29
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Inc.*, 74 Wn. App. 408, 418, 875 P.2d 637 (1994) (quoting *Barnes*, 298 F. at 616). Plaintiffs submit that, had Defendants not breached their duty of loyalty, they would have offered superior deals representing a "fair commutation rate," or class members would have retained what they originally could have expected to receive under their original payout plans.

*Second*, damages may be measured by the benefit retained by Defendants from their breach of their duty of loyalty. It is well-established that a disloyal fiduciary might be made to restore to the injured party the benefit wrongfully obtained by it. *See, e.g.*, *Kane v. Klos*, 50 Wn.2d 778, 789, 314 P.2d 672 (1957) (In action "to require a faithless fiduciary to disgorge his ill-gotten gains," concluding that "[p]ublic policy forbids compromise with a swindler. The fiduciary who engages in such conduct forfeits all right to compensation"); *In re Guardianship of Eisenberg*, 43 Wn. App. 761, 767–69, 719 P.2d 187 (1986) (for breach of duty of loyalty, unfaithful fiduciary is chargeable with "any profit made by him through the breach of duty") (citation omitted); *Williams v. Queen Fisheries, Inc.*, 2 Wn. App. 691, 698–70, 469 P.2d 583 (1970) ("It is true as a general proposition" that an unfaithful fiduciary "may be denied compensation" but discretion to fashion remedy lies with court.).[101] Under this measure of damages, there are plainly no individualized issues of damages. *Tavenner v. Talon Grp.*, No. C09-1370RSL, 2012 WL 1022814, at *3 (W.D. Wash. Mar. 26, 2012) (concluding that common issues predominated because "if plaintiff is able to establish [a breach of] defendant's fiduciary duties, individualized proof of causation and damages may not be necessary at all. A fiduciary who self-deals may be required to disgorge all ill-gotten gains and/or any additional sums paid as compensation for his services."). The obligation to repay or disgorge the value of the benefit received focused on "the receiver of the benefit, not on the provider of the benefit." *See Young v. Young*, 164 Wn.2d 477, 489, 191 P.3d 1258 (2008) (citation omitted).

---

[101] *See also, e.g.*, *Jackson v. Smith*, 254 U.S. 586, 587–88 (1921) (fiduciary is liable to principal for profits gained through exploitation of a conflict of interest); *Restatement (Third) Restitution and Unjust Enrichment* § 43 cmt. a (2011) ("Section 43 states the familiar rule whereby any benefit acquired or retained in violation of a fiduciary duty must be given up to the person to whom the duty is owed."); *id.* cmt. b ("liability in restitution by the rule of this section does not depend on proof either that the claimant has sustained quantifiable economic injury"); *Restatement (First) of Agency* § 469 (1933) (disobedient agent forfeits his right to compensation); Deborah A. DeMott, *Causation in the Fiduciary Realm*, 91 Boston U. L. Rev. 851, 852 (2011) ("[W]hen a fiduciary breaches the duty of loyalty, a distinctive remedy is available to the beneficiary—disgorgement of the benefit that the fiduciary obtained through the breach.").

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

This Defendant-focused disgorgement measures of damages requires no plaintiff-specific inquiries. As set forth *supra* and in the Zass Report, Plaintiffs offer two methodologies of disgorgement, to reflect both GAAP and Statutory Accounting principles. *First*, the "GAAP Reserve Damages" disgorgement methodology, compares Symetra's GAAP reserve values to the purchase price paid to class members in each factoring transaction.[102] This methodology looks solely to the benefit Defendants gained by their factoring of class members' SSA payments. *Second*, the "Statutory Reserves Release Damages" disgorgement methodology compares the commutation value paid by Symetra to SABSCO with the purchase price paid to class members in each factoring transaction.[103] Again, this is a Defendant-focused measure which requires no class member-specific inquiry. Both methodologies are classwide.

### 4. Common Issues Predominate with Respect to Plaintiffs' Unjust Enrichment Claim Against Symetra as Annuity Issuer

Washington's law applies to Plaintiffs' unjust enrichment claim. There are three elements of Plaintiffs' claim: "(1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *City of Seattle v. Monsanto Co.*, 387 F. Supp. 3d 1141, 1161–62 (W.D. Wash. 2019) (quoting *Young*, 164 Wn.2d at 484; *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159–60, 810 P.2d 12 (1991)). Common questions likewise predominate with respect to these elements.

These elements will be established by common proof. The benefit conferred on Symetra is the commutation value of the factored payments, as established in the Zass Report.[104] Symetra's knowledge of the benefit will likewise be established through common proof—indeed, this cannot be reasonably disputed. As shown *supra*, Symetra was aware of the benefit it would receive, entered into the factoring business for the express purpose of obtaining this benefit, and tracked

---

[102] Ex. 1, at pp. 5, 6–7.
[103] *Id.* at pp. 5, 8–11.
[104] *Id.*

PLS.' MOT. FOR CLASS CERTIFICATION - 31
(2:20-cv-01866-MJP)

its receipt of the benefit through monthly reports. Finally, that Symetra retained the benefit of its misconduct under inequitable circumstances will be established for the class as a whole.[105]

Plaintiffs will show class-wide damages for this claim. The remedy for unjust enrichment is disgorgement and, as such, focuses on the benefit retained by Defendants. *See Young*, 164 Wn.2d at 489–90; *Air Serv Corp. v. Flight Servs. & Sys., Inc.*, 199 Wn. App. 1011, 2017 WL 2345701, at *9 (2017). The Zass Report shows that this measure of damages will be established classwide.

## 5.    Common Issues Predominate with Respect to the Contract-Based Claims

### a.    The Power Subclass's Breach of Contract Claim

With respect to Plaintiffs' contract-based claims, "[t]he Court need not conduct a choice-of-law analysis," "because common issues predominate regardless of the law applied." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2019 WL 3410382, at *17–18 (D. Or. July 29, 2019) (citing *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018)). "The basic elements of breach of contract are the same across states." *In re Anthem*, 327 F.R.D. at 314 (citing cases). As such, "[c]ourts routinely certify classes involving standardized conduct and standard form contracts and documents." *In re Premera*, 2019 WL 3410382, at *18 (collecting cases).[106] Here, Plaintiffs seek certification of a subclass whose

---

[105] This case is not like *Kelley v. Microsoft Corp.*, 251 F.R.D. 544 (W.D. Wash. 2008). There, this Court noted that "[p]laintiffs' unjust enrichment claim rises and falls on their theory of the case" because, in assessing whether enrichment was unjust, the trier of fact must still consider whether and how an injustice occurred such that common issues would not predominate. *Id.* at 559. This case is fundamentally different: *Kelley* involved a standard, arms-length consumer transaction. Here, Defendants had a unique relationship whereby they promised, and were duty bound, to protect the financial well-being of each and every class member.

[106] *See also, e.g.*, *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (certifying breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers") (collecting cases); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39–42 (1st Cir. 2003) (certifying breach of contract claim based on standard form mobile phone contract and alleged breach thereof in charging for incoming calls, finding "that common issues of law and fact predominate" because "[t]he case turns on interpretation of the form contract, executed by all class members and defendant"); *Zepeda v. PayPal, Inc.*, No. C 10-2500 SBA, 2015 WL 6746913, at *8 (N.D. Cal. Nov. 5, 2015) ("Plaintiffs allege that PayPal utilized standardized form contracts and uniformly breached those contracts in the same manner with respect to [p]laintiffs and the other members of the [c]laims [c]lass. This is sufficient to show that common questions of fact and law predominate."); *In re Med. Cap. Sec. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts."); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 243 (D. Ariz. 2001) (certifying breach of contract claim based on standard purchase contracts of used car dealer and overcharges of official registration fees); *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure.").

PLS.' MOT. FOR CLASS CERTIFICATION - 32
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

contracts all contain the same contractual provision: "Power Language" prohibiting assignment of their SSA payments.

As to their breach of contract claim, Plaintiffs are entitled to the benefit of the bargain, the expectancy interest: "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain[.]" *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 155, 43 P.3d 1223 (2002) (citation omitted); *see also Jama v. State Farm Fire & Cas. Co.*, No. C20-652 MJP, 2021 WL 2711464, at *12 (W.D. Wash. July 1, 2021). As described above, the Zass Report establishes the Expectancy Measure, and shows that it may be employed classwide. Because Defendants' breach of contractual language raises no question of individualized issues, there are no unique issues defeating predominancy across the subclass.

### b. Good Faith and Fair Dealing Against SABSCO and Tortious Interference with Contract Against Symetra

Under Washington law, a duty of good faith and fair dealing is implied in every contract. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). "This duty requires the parties to a contract to cooperate with each other so that each may obtain the full benefit of performance[.]" *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013). Although an exhaustive list of bad-faith conduct in contract performance is not possible, courts have noted that a violation may arise where a party acts to "evade the spirit of a bargain." *Id.* Good faith performance of a contract requires being faithful to the agreed common purpose of the contract and performing consistently with the justified expectations of the other parties. *Frank Coluccio Constr. Co. v. King County*, 136 Wn. App. 751, 766, 150 P.3d 1147 (2007) (citing *Restatement (Second) of Contracts* § 205 cmt. a (1979)).

Washington law applies to Plaintiffs' tortious interference claim as well. The elements of this claim are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of and intentional interference with that relationship or expectancy; (3) a breach or termination of that relationship or expectancy induced or caused by the interference; (4) an improper purpose or the use of improper means by the defendant that caused the interference; and (5) resulting damage.

*Eugster v. City of Spokane*, 121 Wn. App. 799, 811, 91 P.3d 117 (2004).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Damages for the violation of the duty of good faith and fair dealing and tortious interference are both contractually-based, expectancy measures. *Jama*, 2021 WL 2711464, at *12 (good faith and fair dealing); *Montclair United Soccer Club v. Count Me In Corp.*, No. C08-1642-JCC, 2009 WL 2985475, at *7 (W.D. Wash. Sept. 14, 2009) (tortious interference). Again, the Zass Report establishes that there is a common measurement of this expectancy interest.

**C.    A Class Action is the Superior Method for Managing This Action.**

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides a "non-exhaustive list" of four factors relevant to superiority. *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). The four factors are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

These factors favor class treatment. Initially, the class members do not have an overriding interest in controlling prosecution of this case individually. There are no personal injuries involved and, indeed, several of Plaintiffs' damages measures are Defendant-focused and require disgorgement of ill-gotten gains. This is also the only action of this kind against Defendants of which Plaintiffs are currently aware. The Western District of Washington is likewise the most appropriate forum for this litigation, which focuses on a common course of conduct developed and implemented wholly from this District. There are, finally, no difficulties in administration of this action, given that it will focus on Defendants' common course of conduct, misrepresentations and omissions, and common damage theories.

**VI.    CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request certification of the Nationwide Class and the Nationwide *Void Ab Initio* Subclass and the appointment of Class Counsel.

PLS.' MOT. FOR CLASS CERTIFICATION - 34
(2:20-cv-01866-MJP)

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DATED this 18th day of February, 2022.

KELLER ROHRBACK L.L.P.


*s/ Gretchen Freeman Cappio*
Lynn Lincoln Sarko, WSBA #16569
Gretchen Freeman Cappio, WSBA #29576
Ian S. Birk, WSBA # 31431
Adele A. Daniel, WSBA #53315
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
ibirk@kellerrohrback.com
adaniel@kellerrohrback.com

Alison E. Chase (*pro hac vice*)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496
achase@kellerrohrback.com

Jerome M. Marcus (*pro hac vice*)
Jonathan Auerbach (*pro hac vice*)
MARCUS & AUERBACH LLC
1121 N. Bethlehem Pike, Suite 60-242
Spring House, PA 19477
Tel.: (215) 885-2250
Fax: (888) 875-0469
jmarcus@marcusauerbach.com
auerbach@marcusauerbach.com

Daniel C. Simons (*pro hac vice*)
MARCUS & MARCUS, PLLC
P.O. Box 212
Merion Station, PA 19066
Tel.: (215) 664-1184
dsimons@marcuslaw.us

Edward Stone (*pro hac vice*)
EDWARD STONE LAW P.C.
175 West Putnam Avenue, 2nd Floor
Greenwich, CT 06830
Tel.: (203) 504-8425
Fax: (203) 348-8477
eddie@edwardstonelaw.com

*Attorneys for Plaintiffs*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing which will send notification of such to all CM/ECF registrants.

*s/ Leslie Nims*
Leslie Nims

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384