UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RENALDO WHITE and RANDOLPH NADEAU, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYMETRA ASSIGNED BENEFITS SERVICE COMPANY; SYMETRA LIFE INSURANCE COMPANY,<br><br>Defendants. | CASE NO. 20-1866 MJP<br><br>ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT REGARDING CHOICE OF LAW |

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment Regarding Choice of Law. (Dkt. No. 66.) Having reviewed the Motion, Defendants' Response (Dkt. No. 97), the Reply (Dkt. No. 109), and all supporting materials, and having held oral argument on July 13, 2022, the Court GRANTS Plaintiffs' Motion for Summary Judgment on the Choice of Law.

//

**BACKGROUND**

Plaintiffs bring a proposed class action challenging Symetra Life Insurance Company (Symetra) and its affiliate, Symetra Assigned Benefits Service Company (SABSCO) (together, Defendants), solicitation of putative class members' rights to future periodic payments from structured settlement annuities (SSAs) arising from prior personal injury lawsuits. Plaintiffs Renaldo White and Randolph Nadeau each sustained personal injuries that led to settlements, which included immediate lump-sum payments and future periodic payments. The tortfeasor in each respective case assigned their obligations to make future periodic payments to SABSCO, which received a cash payment from the tortfeasor or their liability insurer. (Amended Complaint ¶ 54 (Dkt. No. 28).) SABSCO purchased SSAs from its affiliate Symetra to fund and administer the future payments. (Id.) Plaintiffs later sold their rights to the future payments to SABSCO in exchange for an immediate lump-sum payment at a significant discount. Plaintiffs now attack Defendants' solicitation of the future payments as predatory. Specifically, Plaintiffs claim that Defendants engaged in common business practices that fraudulently induced annuitants into selling their rights to future periodic payments through a common communication scheme that contained misrepresentations and omissions. (See Pls. Oral Argument Presentation, Slide 13 (Dkt. No. 118).)

Plaintiffs pursue claims for: (1) Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) Violations of the Washington Consumer Protection Act; (3) Violation of the duty of good faith and fair dealing; (4) Breach of fiduciary duty against Symetra; (5) Breach of fiduciary duty against SABSCO; (6) Breach of contract; (7) Tortious interference with contract; (8) Civil conspiracy; and (9) Unjust enrichment. Only Plaintiffs' RICO claim falls under federal law. Plaintiffs remaining claims are state-law claims. Plaintiffs brought this Motion

asking the Court to continue its application of Washington law, while Defendants argue that the law of all fifty states should apply.

## ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

**B.    Choice of Law Standard**

District courts sitting in diversity apply the choice-of-law rules of the forum state. See Lazar v. Kroncke, 862 F.3d 1186, 1194 (9th Cir. 2017). The parties do not dispute that Washington's choice of law framework governs. Washington employs a two-step approach to choice of law questions. The Court must first determine whether an actual conflict exists between Washington and other applicable state laws. See Burnside v. Simpson Paper Co., 123

ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT REGARDING CHOICE OF LAW - 3

Wn.2d 93, 103–04 (1994); DP Aviation v. Smiths Indus. Aerospace and Def. Sys. Ltd., 268 F.3d 829, 845 (9th Cir. 2001) (applying Washington law where no conflict was shown). In the absence of a conflict, Washington law applies. See Burnside, 123 Wn.2d at 103–04. If an actual conflict exists, the Court must then determine the forum or fora that have the "most significant relationship" to the action to determine the applicable law. Johnson v. Spider Staging Corp., 87 Wn.2d 557, 580 (1976).

When a party seeks to apply foreign law, "the law of the forum determines the standards of proof of the content of foreign law, as well as the effect of a party's failure to show the content of foreign law." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1001 (9th Cir. 2006). Under Washington law, a party seeking to invoke foreign law has the burden of proving its substance. British Columbia Ministry of Health v. Homewood, 93 Wn. App. 702, 709–12 (1999). Absent "sufficient proof to establish with reasonable certainty the substance of foreign principles of law," Washington law applies. Id. at 709; see also Burnside, 123 Wn.2d at 100 (Recognizing scholastic findings that the law of the forum should be displaced only by timely invocation of an interested party who is able to demonstrate its relevance and superiority).

### 1. An Actual Conflict Exists as to Tort Claims, but not Contract Claims

Because Plaintiffs only concede that an actual conflict exists as to their tort claims, the Court focuses on whether there is an actual conflict concerning their breach of contract claims. "Because Plaintiffs seek certification of a nation-wide class, the Court considers the law of all concerned states. . . [but] the Court need not examine the law of all jurisdictions so long as actual conflict exists between Washington law and the law of one other concerned state." Kelley v. Microsoft Corp., 251 F.R.D. 544, 551 (W.D. Wash. 2008), certification withdrawn, No. C07-0475 MJP, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009). "An 'actual conflict' exists 'between

the laws or interests of Washington and the laws or interests of another state' when the ... states' laws could produce different outcomes on the same legal issue." Veridian Credit Union v. Eddie Bauer, LLC, 295 F. Supp. 3d 1140, 1150 (W.D. Wash. 2017) (quoting Kelley, 251 F.R.D. at 550).

In contract actions where the contract contains no choice-of-law provisions, Washington law requires that "the validity and effect of a contract [be] governed by the law of the state having the most significant relationship with the contract." Mulcahy v. Farmers Ins. Co., 152 Wn.2d 92, 100 (2004) (internal quotation marks and citation omitted). Plaintiffs bring two contract/quasi-contract claims: (1) breach of good faith and fair dealing; and, (2) breach of contract as to the anti-assignment, or power language, provisions attached to each subclass members' respective settlement agreements. Defendants do not contest the application of Washington law to Plaintiffs' breach of good faith and fair dealing claim.

The Court agrees with Plaintiffs that there is no conflict of law as to the breach of contract claims because the elements of a breach of contract claim are the same nationwide. Courts have routinely held that form contracts are suitable for class certification. See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 233 n.8 (1995) (stating that "[b]ecause contract law is not at its core 'diverse, nonuniform, and confusing,' we see no large risk of nonuniform adjudication"); Mortimore v. F.D.I.C., 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure."); In re Anthem, Inc. Data Breach Litig., 327 F.R.D. 299, 314 (N.D. Cal. 2018) ("The basic elements of breach of contract are the same across states."); In re Premera Blue Cross Customer Data Sec. Breach Litig., No. 3:15-MD-2633-SI, 2019 WL 3410382, at *18 (D. Or. July 29, 2019) (collecting cases).

Defendants do not contest the lack of conflict as to the elements of the claims, but instead argue that states differ in their enforcement and interpretation of anti-assignment provisions. By way of support, Defendants claim that California conflicts with Washington law because California courts have previously found "that contractual anti-assignment provisions are generally ineffective in barring transfers of structured settlement payment rights." 321 Henderson Receivables Origination LLC v. Sioteco, 173 Cal. App. 4th 1059, 1075 (2009). But the Court of Appeals in Sioteco, did not hold that anti-assignment provisions are always ineffective. It only held that "where no interested parties object to the transfer of structured settlement payment rights," anti-assignment provisions in a structured settlement agreement "do not bar" a court-approved transfer of structured settlement payments." Johnson v. J.G. Wentworth Originations, LLC, 284 Or. App. 47, 55, 391 P.3d 865, 869 (2017) (quoting Sioteco at 1076). Where a party to the agreement objects to the transfer under the anti-assignment clause, a California court would enforce said clause. There is no Washington caselaw or statute to suggest that the outcome would be any different under Washington law. Rather, Washington courts have previously held that "assignments are governed by general principles of contract law." Rapid Settlements Ltd's Application for Approval of Structured Settlement Payment Rts. v. Symetra Assigned Benefits Serv. Co., 133 Wash. App. 350, 372 (2006). And while courts have come out differently as to the enforceability of antiassignment provisions, the principles that guide these decisions are generally the same, which does not create a conflict. See Rumbin v. Utica Mut. Ins. Co., 254 Conn. 259, 266-67 (2000) (applying common law to question about enforceability of an anti-assignment clause in SSA); Wonsey v. Life Ins. Co. of N. Am., 32 F. Supp. 2d 939, 942-43 (E.D. Mich. 1998) (same); Grieve v. Gen. Am. Life Ins. Co., 58 F. Supp. 2d 319, 322-23 (D. Vt. 1999) (analyzing issue under common law).

Defendants also argue that conflicts exist because each of the settlement contracts is governed by different choice of law provisions. In support, Defendants cite to Plaintiff Nadeau's settlement contract which specifies Michigan law applies, and two other subclass members' settlement contracts that specify application of Arizona and California law. (See Def. Resp. at 7-8.) But Defendants can only point to these three subclass members whose contracts contain such provisions, despite being asked to produce them for each subclass member in discovery. (Reply at 9.) For these three class members, the Court will likely apply the law specified in the contract. Dansby v. Fetzek, 117 Wn. App. 1077 (2003) ("Washington courts defer to the parties" choice of law when it is clearly expressed."). But aside from these three subclass members, Defendants fail to convince the Court that a choice-of-law provision in any other subclass members' settlement contract poses a conflict of law issue.

Defendants also argue that there are state law variations as to each state's structured settlement protection act ("SSPA"). But Plaintiffs do not challenge the state court hearings subject to those acts. Instead, they challenge Defendants' conduct prior to those proceedings. So any variation among SSPAs is irrelevant to Plaintiffs' claims and the Court's choice of law determination.

In sum, the Court finds no conflict as to Plaintiffs' contract-based claims.

### 2. The State with the Most Substantial Relationship is Washington

If actual conflict exists, Washington law requires application of the law of the forum that has the "most significant relationship" to the action. See Johnson, 87 Wn.2d at 580. Washington has adopted the Second Restatement of Law on Conflict of Laws (1971) ("Restatement"), which provides guidance on this issue. Id. The "most significant relationship" test requires a two-step inquiry. First, the court must determine which state has the most significant relationship to the

cause of action. Second, if the relevant contacts to the cause are balanced, then the court must consider "'the interests and public policies of potentially concerned states and ... the manner and extent of such policies as they relate to the transaction in issue.'" Id. at 582 (quoting Potlatch No. 1 Fed. Credit Union v. Kennedy, 76 Wn.2d 806, 810 (1969)).

The first step of the most significant relationship inquiry evaluates the contacts with each jurisdiction. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 968 (2014). The Restatement sets forth the relevant contacts that a court should consider when determining which state has the most significant relationship. These contacts should be evaluated based on their significance and then determine where these contacts are found. See Kelley, 251 F.R.D. at 551. In analyzing these contacts, the Court finds that the balance of contacts weighs in favor of the application of Washington law.

Plaintiffs have brought several tort claims against Defendants. The Restatement of Conflicts Section 145 and 148 apply to all of these. The Court first considers Section 148 and then Section 145.

The Washington Supreme Court formally adopted Restatement Section 148, finding it particularly applicable to fraud claims. See FutureSelect, 180 Wn.2d at 967-69. Under Section 148 the Court must consider "1) the place where plaintiff acted in reliance on the representations; 2) the place where the plaintiff received the representations; 3) the place where the defendant made the representations; 4) the domicile, residence, nationality, place of incorporation, and place of business of the parties; 5) the place where a tangible thing, which is the subject of the transaction between the parties, was situated at the time; and 6) the place where the plaintiff is to render performance under a contract that he has been induced to enter by the false representations of the defendant." Id. at 969.

Neither party completely analyzes the contacts under Section 148, and the Court finds that Section 148's considerations do not to resolve the issue. The tort claims brought by Plaintiffs do not require reliance, making the first Section 148 element immaterial. Section 148's second and third elements cancel each other out given that the putative class spans the country and Defendants made the representations from Washington. The same conclusion flows as to the fourth element. As to the fifth element, though it is difficult to say where future payments under the SSAs were stored at any given time, the answer does not favor one state over another. Finally, neither party has put forth evidence to suggest putative class members were instructed as to where to sign away their rights to future payments. On balance, the Section 148 elements do not show a particular lean towards any specific state.

Because Section 148 is not informative, the Court analyzes contacts under Section 145. Section 145 asks to the Court to consider "a) the place where the injury occurred, b) the place where the conduct causing the injury occurred, c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and d) the place where the relationship, if any, between parties is centered." Kelley, 251 F.R.D. at 551–52.

Applying Section 145, the Court finds that Washington has the most significant relationship to the claims. First, considering the proposed nationwide class, the class members' injury occurred throughout the nation. Second, Washington is the location where the injury-causing conduct occurred. Third, the class members' residence and Defendants' place of business balances out between Washington and the rest of the country. Lastly, the parties' relationship is not centered in any particular state, as it could be characterized as Washington or the states in which each class member resides. Though contacts with all 50 states exist, the Court does not merely count contacts, but instead evaluates these contacts based on their significance.

ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT REGARDING CHOICE OF LAW - 9

See Kelley, 251 F.R.D. at 55; Johnson, 87 Wn.2d at 581. In this context, the Court finds that the most significant contacts are to Washington. Plaintiffs' claims focus on Defendants' conduct arising out of Washington. Defendants' decision about and implementation of the factoring program occurred in Washington. Washington is also the place where Defendants developed their marketing materials and determined what to say and not to say to the proposed class members. Defendants' employees were all located in Washington and it was from Washington that they engaged with class members. None of the other factors bear much significance, and in cases of fraud and misrepresentation there may be "little reason in logic or persuasiveness to say that one state rather than another is the place of injury. . ." Restatement § 145 cmt. e.

The Court therefore finds that Washington law applies to the tort claims.

## CONCLUSION

Washington law applies to all of the tort and breach of contract claims. Although a conflict of law exists as to the tort claims, Washington law still applies because it has the most significant relationship to them. And because there is no conflict of law as to the contract claims, the Court applies Washington law to them except as to those three subclass members who have valid and enforceable choice-of-law provisions. Accordingly, the Court GRANTS Plaintiffs' Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 28, 2022.

Marsha J. Pechman
United States Senior District Judge

ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT REGARDING CHOICE OF LAW - 10